**JORDAN v. WEST TEXAS GIN CO.**
(No. 797.)

(Court of Civil Appeals of Texas. Beaumont. June 6, 1922.)

1. Appeal and error  1024(3)—Whether letter confirming oral contract was to be contract for purchase, determining the venue thereof, held question for trial court.

On hearing of plea of privilege in an action concerning sale and shipment of cotton seed, whether a letter dated day after telephone conversation concerning sale was to form a part of the contract between the parties, in that there was an understanding that such a letter of confirmation should be written, held a question of fact to be determined by the trial court.

2. Venue  7—Attaching drafts to bills of lading held not to change complete verbal contract, so as to affect venue.

The fact that bills of lading for shipments of cotton seed were accompanied by drafts attached and sent to a bank in a certain county for collection held not to have the effect to change a complete verbal contract, so as to change venue of action on the contract.

3. Venue  7—Whether contract was to be performed in county of defendant's residence held question of fact for trial court.

Whether a contract for the sale of cotton seed was to be performed in the county of seller's residence, by simply loading on cars held a question of fact for the trial court.

Appeal from District Court, Milam County; John Watson, Judge.

Action by J. L. Jordan against the West Texas Gin Company. From a judgment sustaining a plea of privilege, plaintiff appeals. Affirmed.

Campbell, Greenwood & Barton, of Palestine, for appellant.

Henderson, Kidd & Henderson, of Cameron, for appellee.

HIGHTOWER, C. J. Appellant, Jordan, filed this suit in the district court of Cameron county seeking recovery of damages against appellee in the sum of $1,114.30, claimed to have been sustained in consequence of an alleged breach of contract on appellee's part, by the terms of which it was alleged appellee bound and obligated itself to sell and deliver to appellant, at Cameron, in Milam county, Tex., 200 tons of cotton seed of certain grade and quality, at the price of $78 per ton. Appellant alleged that 10 cars of the seed were delivered to him in compliance with appellee's contract, but that four cars out of the total number delivered contained seed of low and inferior grade, and that they were worth $10.50 less per ton than the seed which appellee contracted to deliver, the difference in such values aggregating the amount above stated sued for.

Appellee, in due time, filed its privilege to be sued in Hardeman county, Tex., which plea was in all respects in proper form, and, if the facts therein stated be true, showed that appellee was entitled to be sued in Hardeman county, the county of its domicile, and the prayer was that the plea be sustained and the venue transferred to Hardeman county.

Appellant filed a controverting affidavit, in which he stated, substantially, that appellee

had agreed to sell and deliver to appellant, at the Cameron Cotton Oil Mills in Cameron, Milam county, the cotton seed in question, and that therefore the contract between the parties was to be performed, or at least partly performed, in Cameron county, and that therefore the plea of privilege should not be sustained, etc. Appellant alleged that the contract between the parties was substantially that the 200 tons of cotton seed contracted for were to be loaded on cars at different points on appellee's tracks in west Texas; and that the price agreed to be paid therefor was $78 per ton, f. o. b. the cars where loaded on appellee's tracks; and that, in the contract between the parties for the purchase and sale of such seed, it was agreed and understood and made a part of the contract that appellee should ship and deliver such seed when loaded to the Cameron Cotton Oil Mills at Cameron, in Milam county, for the credit of appellant; and that the bill of lading, representing each shipment, was to be accompanied by a draft attached, drawn by appellee against appellant; and that such bill of lading and draft were to be sent to the First State Bank at Oakwood, in Leon county, Tex., for payment and collection; that, in compliance with such contract, agreement, and understanding, the 200 tons of cotton seed were shipped by appellee and delivered to the mill at Cameron; and that appellee took bills of lading therefor and attached to such bills, drafts for the purchase price of said seed and sent the same for payment and collection to said bank at Oakwood; and that the same were. paid by said bank, in accordance with the agreement between the parties; and that these facts constituted, in effect, a written contract on the part of appellee to sell and deliver to appellant at Cameron in Milam county, Tex., the cotton seed in question.

The plea of privilege was heard by the trial court, sitting without a jury, and the plea was sustained and the cause ordered transferred to Hardeman county, appellee's domicile, for trial.

The undisputed facts show that appellant, Jordan, resides at Crockett, in Houston county, Tex., and that appellee is a partnership, the members of which are domiciled and reside in Hardeman county, Tex.

The only evidence found in the record, bearing on the issue of fact as to what the contract was between the parties for the purchase and sale of the cotton seed, was that of appellant himself, and that of Mr. Gilliland, one of the members of appellee's firm.

According to appellant's evidence on the point, stated substantially, on the evening of December 16, 1919, Mr. Gilliland, acting for appellee, called appellant by telephone at his office and inquired of appellant whether he was in the market for the purchase of cotton seed, and appellant replied that he was if he could obtain such grade and quality of seed . as he desired, and stated to Mr. Gilliland that he would take as much as 200 tons of such seed if they could agree upon the price. During the conversation at the time, Mr. Gilliland priced the seed to appellant at $80 per ton, but appellant stated that he could not pay that much for the seed and that thereupon they agreed for the sale and purchase of 200 tons of seed at $78 per ton f. o. b. the cars on appellee's tracks. Appellant further testified, substantially, that it was then and there understood and considered during the conversation over the phone that the seed should be shipped when loaded to the Cameron Cotton Oil Mills at Cameron, in Milam county, for the credit of appellant, and that the seed was to be weighed and graded by the inspectors of said mill, and that such weights and grades should be binding upon the parties, and that payment for the seed should be made in accordance with such weights and grades, after they were ascertained. He further testified, substantially, that it was agreed in the telephone conversation between him and Mr. Gilliland that a bill of lading should be issued for each car of the shipment, and to such bill of lading should be attached a draft against appellant for the price of the seed, and that the bill of lading, with such draft, should be sent to the bank at Oakwood, in Leon county, for collection. Appellant further testified that, during the conversation over the phone, it was distinctly understood and agreed by Gilliland and himself that he (appellant) would write a letter of confirmation of the contract on the following day, which should express in writing the terms of the contract, and that such letter of confirmation should be considered as a part of the contract for the sale and purchase of the seed. Appellant then testified that, in accordance with the terms of the contract as he had stated it, the shipment of seed was made, and that each car of the shipment was accompanied by a bill of lading to which a draft was attached and sent to the bank at Oakwood for collection, and that the same was paid, in accordance with the contract as he had stated it.

Mr. Gilliland testified, substantially, that, on the evening of December 16, 1919, he did call appellant by phone, and inquired of him whether he was in the market for the purchase of cotton seed; that appellant stated that he was in the market if he could get such seed as he wanted; and that appellant stated that he would take as much as 200 tons; and that he and appellant then and there, over the phone, agreed that appellee would sell to appellant 200 tons of good mill run cotton seed at the price of $78 per ton f. o. b. the cars in appellee's tracks, as the seed were loaded. Mr. Gilliland testified, substantially, that, after the agreement was

closed as to the price and loading of the cars on appellee's tracks, he asked appellant for shipping instructions, and appellant stated, substantially, that he desired the seed to be shipped to the Cameron Cotton Oil Mills at Cameron, in Milam county, to the order of appellant, and that appellant requested that the bills of lading be sent, with drafts attached, to the bank at Oakwood in Leon county for payment, and he further stated that this request or instructions on the part of appellant was complied with. He testified, emphatically, that he never at any time or in any conversation or in any other manner agreed to deliver the cotton seed to appellant at Cameron or anywhere else, other than on appellee's tracks after they were loaded in the cars, as before stated. He also denied that there was any understanding between himself and appellant during the conversation over the phone, to the effect that their contract should be further supplemented or added to or in any manner confirmed, by a letter of confirmation to be thereafter written by appellant.

[1] There was introduced in evidence what purported to be a carbon copy of a letter from appellant to appellee, dated December 17, 1919, which was the next day after the telephone conversation between Gilliland and appellant, and which shows very clearly, if the same should be considered as reflecting the terms of the contract between the parties, that the cotton seed was to be shipped and delivered by appellee to the Cameron Cotton Oil Mills for appellant, and that the weights and grades of the shipments should be made by the inspectors of the mill, and that the parties were to take such weights and grades and base their settlement on the same, and, in short, this letter would compel the conclusion that the contract between the parties was in writing, and that appellee thereby bound itself to perform its part thereof in Milam county. But whether or not such a letter was a part of the contract between the parties was a question of fact, to be determined by the trial judge, and, if he determined that there was no understanding that such a letter of confirmation should be written and should be a part of the contract, then his determination of the question would be conclusive.

Mr. Gilliland testified that this purported carbon copy of a letter was the first intimation he or his firm had that there was to be or was such a letter; that his firm never at any time received the original of such letter, although he showed by his testimony that, if such letter had been written, as claimed by appellant, his firm would have in all probability received it. He further stated, however, that, had any such letter been written as claimed by appellant, and received by appellee, his firm never would have agreed to its terms, and that no such contract as the letter evidenced would have been carried out.

[2] The trial court filed no findings of fact or conclusions of law, but merely entered his judgment sustaining the plea of privilege. If the essential terms of the contract for the sale and purchase of the cotton seed were as testified to by the witness Gilliland, the contract was a verbal one, and there was no promise in writing on the part of appellee to perform the same or any part of it in Milam county, but, on the contrary, according to Mr. Gilliland's evidence, appellee performed its part of the contract when it loaded the cotton seed in cars on its tracks, as testified by him. The fact that bills of lading for the shipments of the seed were accompanied by drafts attached and sent to the bank for collection, as before stated, would not have the effect to change a complete verbal contract in all of its essential elements, that had already been made between the parties. We regard the point as thoroughly settled by the following authorities: Southwestern Grain & Seed Co. v. Blumberg (Tex. Civ. App.) 162 S. W. 1; Seley, etc., v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399; Sanders v. Hester Cotton Co. (Tex. Civ. App.) 195 S. W. 269; Watson v. Howe Grain & Mercantile Co. (Tex. Civ. App.) 214 S. W. 843; Griffith v. Gohlman, Lester & Co. (Tex. Civ. App.) 200 S. W. 233.

[3] There being no specific findings of fact by the trial court, its judgment clearly involves a finding that the terms of the contract between the parties were as testified to by the witness Gilliland, and that issue of fact touching the plea of privilege was determined in appellee's favor. The evidence of Gilliland, as we have stated it substantially, was sufficient to authorize a finding by the trial court that the terms of the contract were as testified to by Gilliland, and therefore the finding on the issue involved in the judgment has support in the evidence and must be sustained.

It follows that no error has been shown on the part of the trial court in sustaining the plea of privilege, and that judgment is therefore affirmed.