# CASES DECIDED

IN THE

# Supreme Court of Georgia.

## MARCH TERM, 1893.

### WOODRUFF v. GRADDY & SON.

Where, in consequence.of various negotiations by mail and telegraph, a contract for the sale of certain wheat was made, under which the wheat was to be delivered by the seller to the purchaser in the city of the latter's place of business; and the wheat was consigned to the order of the seller and bills of lading taken accordingly, and afterwards, before the wheat arrived at destination, the purchaser, upon a warranty from the seller that it was equal to a certain sample, paid a large per cent. of the price agreed upon, receiving at the time from the seller the bills of lading duly indorsed and which controlled the possession and delivery of the wheat, the sale was executed, and the title passed to the purchaser. Consequently, the latter, having already accepted the wheat without inspecting it, had no right, and was under no obligation, when it actually arrived, to refuse to use it or offer to return; and in a suit for the balance of the price, was entitled to set off or recoup any damages he may have sustained by a failure of the wheat to come up to the sample ; and the court, under these circumstances, erred in charging the jury that if, after examining and inspecting the wheat and discovering its defective condition, the purchaser accepted and used it, this was a waiver of any defect in its condition, and he was bound to pay the contract price.

March 10, 1893.    Argued at the last term.

Before Judge MARTIN.    Muscogee superior court. November term, 1891.

BATTLE & GILBERT, for plaintiff in error.

F. D. PEABODY and J. H. WORRILL, contra.

LUMPKIN, Justice.

In October, 1890, Graddy & Son, of Versailles, Ky., sent to George W. Woodruff, of Columbus, Ga., by mail, a sample of wheat, accompanied by a letter offering to sell him ten thousand bushels to be delivered in November, "weights and goods warranted to within one per cent." Woodruff replied by telegram asking the price of ten thousand bushels equal to sample, and Graddy & Son by telegram quoted five thousand bushels at $1.17; whereupon Woodruff telegraphed them saying, "Accepted, like sample and sweet. Await shipping instructions by mail." On the same day he offered, by telegram, $1.16 per bushel for an additional lot of four thousand bushels "equal to sample," and this offer was accepted. He also wrote a letter saying that he accepted the five thousand bushels at $1.17, and stating therein, "the wheat must be equal to sample, sweet and sound." Some additional telegrams and letters passed between the parties relating to the order for four thousand bushels, but these are not pertinent to the present discussion. Graddy & Son shipped the lot of five thousand bushels, and, according to Woodruff's evidence, about eight hundred bushels of the four thousand, all consigned to their own order, and drew on Woodruff for the price of the wheat shipped, attaching to their draft indorsed bills of lading which controlled the possession and delivery of the wheat. The draft was presented before the arrival of the wheat, and Woodruff refused to pay it; whereupon G. C. Graddy, one of the firm of Graddy & Son, went to Columbus to see him about the matter, and insisted upon a payment on the contract. Woodruff still objected to paying the money until the wheat arrived. Graddy then assured him that the wheat shipped was as good as the sample, and upon the faith of this assurance, Woodruff paid 90 cents a bushel upon the wheat which had been shipped, and

Graddy delivered to him the bills of lading, which entitled Woodruff to receive the wheat from the railroad upon its arrival.

This, we think, constituted an executed and complete sale of the wheat. By giving up the indorsed bills of lading, Graddy & Son parted with their title to and control of the wheat, and it became the absolute property of Woodruff. No other person then had the right to demand the wheat from the railroad company, and undoubtedly it would have been subject, as the property of Woodruff, to a judgment or other lien against him. Whatever may have been the legal effect of the letters and telegrams above referred to, and which led up to the consummation of the sale, we think the final terms thereof were embodied in the agreement made between Graddy and Woodruff at the time the latter paid the money and received, in return, the bills of lading. If Graddy's assurance did not, under the circumstances, amount to an express warranty on the part of his firm that the wheat then *en route* to Columbus was as good as the sample in question, it certainly did at least raise an implied warranty to this effect; and the sale, as already shown, being executed, it was immaterial, for the purposes of this case, whether the warranty was express or implied. After this transaction, the wheat, in contemplation of law, was in Woodruff's possession and was his property. What he did really amounted to an acceptance of it without inspection. When it finally arrived, no matter what its condition may have been, *it was his wheat*, and he had no right to rescind the contract and refuse to use it, nor was he under any obligation to offer to return it, but did have the undoubted right to stand upon the warranty he had received. Code, §2652; *Clark & Co.* v. *Neufville,* 46 *Ga.* 261. In the case cited, it was also held that if there be fraud in the sale, the rule is different, and the vendee

may rescind.   The element of fraud, as a basis of rescission, is not referred to in the second head-note, in which it is ruled that a buyer cannot rescind without returning or offering to return the goods, but this head-note must, of course, be understood as applicable only in cases where the buyer has a right to rescind.   Thus understood, the head-note and opinion fully sustain what is ruled in the case at bar.

Suit was brought by Graddy & Son for the balance due, at the contract price, on the wheat delivered, and for damages alleged to have been sustained by Woodruff's failure to accept the balance contracted for.   The defence was that the wheat failed to come up to the sample by which it was sold, and was worth fifteen cents per bushel less than it would have been if equal to sample, and Woodruff sought to set off and recoup against plaintiffs' action the damages he had thus sustained. The charge of the court on this subject, the substance of which is stated in the head-note, cut him off from so doing, for it was virtually admitted that he fully knew the condition of the wheat before he unloaded it from the cars and used it.   The view of the trial judge was, that if Woodruff, after examining and inspecting the wheat and discovering its condition, received it into his mill and used it, he should be held to have waived any right to complain of its defective condition, and was bound to pay the full contract price.   Whatever may be the law applicable in a case where the sale is executory, and it is not contemplated by the parties that it shall be complete until after inspection and actual and formal acceptance of the goods by the purchaser, we are quite confident that in the present case the sale was executed and fully consummated before the wheat arrived; that Woodruff, by accepting and acting upon the warranty of Graddy & Son, whether express or implied, and relying on the same in parting with his money, had

waived his right to inspect the wheat or to reject it, if found defective and not equal to sample; and it must follow as an inevitable conclusion that, being placed in this position, he could protect himself from loss by holding Graddy & Son to the warranty, and making them liable for a breach thereof. This, we think, accords both with sound law and with sound justice, and, as already stated, is supported by the code and decision of this court above cited.

It is quite probable that the court below treated the sale as being executory until inspection and formal acceptance of the goods, and counsel on both sides in the argument here seemed to take this view of it. But a thorough examination of the evidence has convinced us that, under the undisputed facts, the sale was really complete before the wheat ever arrived in Columbus, and we have therefore ruled upon the case accordingly.

We have not, of course, intended to express or to intimate any opinion as to what was the actual condition of the wheat on its arrival, or whether it was or was not equal to sample. The plaintiff below earnestly insisted that it was, and introduced testimony in support of this contention. The evidence offered by the defence was to the contrary. Whatever may have been the real truth upon this question, and even though the jury might have believed from the evidence that the wheat was in fact much inferior to the sample, the verdict rendered in favor of the plaintiff was inevitable under the charge of the court complained of, for it was not contended by Woodruff that he was not fully informed as to the condition of the wheat before he unloaded it from the cars and used it in his mill.

The case should be tried over again upon the line indicated, the jury being left to decide the questions of fact involved, under proper instructions from the court.

*Judgment reversed.*