**MARCUS et al. v. ARMER.   (No. 6967.)**

(Court of Civil Appeals of Texas. San Antonio. June 6, 1923. Rehearing Denied June 29, 1923.)

1. **Venue** ⬲⯈7—Oral contract of sale held not converted into written contract, performable in another county by taking order bill of lading.

Where oral contract of sale obligated seller only to put cotton seed in sacks and load it on cars, the taking of order bill of lading, which was transferred to buyer upon payment, did not convert the contract into one in writing performable in county of destination, so as to authorize action for breach in such county under the fifth subdivision of the venue statute.

2. **Venue** ⬲⯈21—Exceptions to general rule should not be extended but limited by strict construction.

Exceptions to general rule giving defendant the privilege of being sued in county of his residence ought not to be extended by loose construction, but confined to their original purposes by strict construction.

3. **Venue** ⬲⯈7—Delivery of order bill of lading to buyer upon payment transferred possession and title and made carrier liable to him.

Where seller, obligated only to sack cotton seed and load it on cars, took order bill of lading and forwarded it to buyer through banks, assignment and delivery thereof to buyer transferred possession and title to him, and carrier became responsible to him for safe transportation and delivery.

Appeal from District Court, Travis County; George Calhoun, Judge.

Action by L. E. Armer against E. A. Marcus and others. From an order overruling a plea of privilege, defendants appeal. Reversed and remanded, with directions.

White, Wilcox & Graves and J. Harris Gardner, all of Austin, for appellants.

Garrett, Browntree & Goldsmith, of Austin, for appellee.

SMITH, J. This appeal is from an order made by the district court of Travis county, overruling a plea of privilege filed by E. A. Marcus and another to be sued in Burnet county, in which they reside.

The suit was for damages for breach of contract in which appellant Marcus, a resident of Burnet county, is alleged to have obligated himself to sell and deliver 25 tons of cotton seed to appellee, Armer, in Travis county. It was alleged that Armer purchased the seed by sample, which tested "95 per cent. germination," whereas, the seed actually delivered to him tested only "48 per cent. germination." It was alleged that this contract was performable by Marcus in Travis county, and that venue of the suit against him lay in that county by virtue of the exception embraced in subdivision 5, art. 1830, the general venue statute.

The terms of the contract of purchase and sale, none of which were in writing, are thus stated by the court below:

"The court is further of the opinion, and finds from the evidence, that the plaintiff about the time alleged (December 1, 1919) was in Bertram, Burnet county, Tex., and purchased orally from the defendants a carload of cotton planting seed at the price of $112.50 per ton and deposited $100 on the purchase price; that the plaintiff wanted the cotton seed sacked, and it was understood between the parties either at that time or later that the plaintiff was to furnish the sacks and pay for the labor of

putting the seed in the sacks, and defendants were to load the sacked seed in the car, and the plaintiff was to pay the freight on the seed from Bertram, it being understood between the parties that the plaintiff would later notify the defendants the place where the car of seed was to be shipped. * * * "

The court finds that, in pursuance of this oral contract, the parties performed, as follows:

"That during the latter part of January, 1920, the plaintiff notified the defendant to ship the seed to Austin, Travis county, Tex., and that on or about the 14th day of February, 1920, the defendants, having loaded the sacked seed in the car at Bertram, procured from the railroad company at Bertram a 'shipper's order' bill of lading covering the seed, consigned 'to shipper's order, notify M. Armour, Austin, Texas,' and the defendants drew a draft on the plaintiff for the price of the seed, less one hundred dollars theretofore deposited, and indorsed said bill of lading and draft to the plaintiff upon his paying the amount stated in the draft, and that plaintiff paid the draft, got the bill of lading from the bank and presented same to the railway company at Austin and paid the freight charges and the car of seed was delivered to him."

And concludes as a matter of law: ·

"The court further finds that by causing said car of cotton seed to be shipped in the manner above stated the defendants became obligated upon a contract in writing, to wit, the bill of lading and draft above referred to, performable in Travis county, Tex., and that said suit therefore falls within exception or subdivision 5 of the venue statute."

It is contended that, although the contract for the purchase and sale of the cotton seed was made orally, and not in writing, the subsequent act of the seller, in consigning the seed to Armer on an "order" bill of lading, and forwarding this bill of lading, with sight draft attached, through banks, to Armer at Austin, constituted a written obligation on the part of the seller to deliver the seed in Travis county; that this act converted the original oral contract into one in writing, performable by the seller in Travis county, whereby the transaction was brought within the purview of said subdivision 5.

[1, 2] We think it would be an unwarranted extension of this exception to construe it to embrace this transaction for the purpose of depriving appellant of his privilege of being sued in the county of his residence. We do not think the transaction comes within either the letter or the spirit of the exception. As has often been said, the privilege of being sued in the county of one's residence is a valuable right, of which the citizen ought not lightly to be deprived. The guarantee of this right has been relaxed by statutory exceptions, which have in turn been extended by loose construction, until it has become a more or less shadowy and elusive privilege. These exceptions ought not to be further extended by loose construction, but rather should they be confined to their original purposes by strict construction. J. R. Todd v. W. E. Jamar Seed Co., 252 S. W. 256, and Border Milling Co. v. Bednarz & Billimek, 251 S. W. 1115, both recently decided by this court.

[3] The contract for the breach of which the suit was brought was oral; none of it was in writing. The respective rights and obligations of the parties were fully fixed and agreed upon, orally. As made, every obligation imposed by its terms upon Marcus, the seller, was performable in Burnet, the county of his residence. The seed he sold was situated there; there he was to put it in sacks, and to load it in the cars. With these acts his obligations ended, and the buyer's obligations began. The latter was to pay the seller for the seed, and for the sacking of the seed, and was also to pay the freight charges covering its transportation to destination. When, some three months later, in pursuance of this oral contract, the seller loaded the seed on the car, gave billing instructions to the carrier, received the bill of lading from the latter, and assigned and delivered it to the buyer, he transferred both the possession and the title, and the carrier became responsible to the buyer for the safe transportation and delivery of the goods to the latter. The bill of lading became the symbol of the property, which it represented, and this symbol was indorsed and forwarded by the seller, through the usual channel, the banks, to the buyer, who accepted, and received delivery from the carrier. The seller thus parted with the possession and control of the goods, the buyer became liable to him for the price thereof, and the carrier became liable to the buyer for loss or damage thereto in transit. A different rule might have applied if the goods had been shipped subject to inspection by the purchaser at destination, because the sale and delivery would in such case have been conditioned upon acceptance by the buyer. But the goods were not subject to this condition; the sale and delivery was absolute when delivered to the carrier and bill of lading assigned to and accepted by the buyer, and the "order" bill of lading and draft constituted the means selected by the parties for their convenience in making and receiving payment. The suit was not for a breach, or to enforce specific performance, of any provision contained in the bill of lading. It was for a breach of an implied warranty of the quality of the cotton seed.

The issuance and indorsement of the order bill of lading, coupled with the drawing of the draft, was but an incident to the performance of a complete contract made three months before, and the law will not exag-

gerate that incident into controlling importance, superseding the original contract, in order to deprive the seller of the valuable privilege of having his rights tried by a jury of the vicinage. Jordan v. Gin Co. (Tex. Civ. App.) 242 S. W. 542; Gulf, W. T. & P. Ry. Co. v. Browne, 27 Tex. Civ. App. 437, 66 S. W. 341. In the Jordan Case it was said:

"If the essential terms of the contract for the sale and purchase of the cotton seed were as testified to by the witness Gilliland, the contract was a verbal one, and there was no promise in writing on the part of appellee to perform the same or any part of it in Milam county, but, on the contrary, according to Mr. Gilliland's evidence, appellee performed its part of the contract when it loaded the cotton seed in cars on its tracks, as testified by him. The fact that bills of lading for the shipments of the seed were accompanied by drafts attached and sent to the bank for collection, as before stated, would not have the effect to change a complete verbal contract in all of its essential elements, that had already been made between the parties. We regard the point as thoroughly settled by the following authorities: Southwestern Grain & Seed Co. v. Blumberg (Tex. Civ. App.) 162 S. W. 1; Seley, etc., v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399; Sanders v. Hester Cotton Co. (Tex. Civ. App.) 195 S. W. 269; Watson v. Howe Grain & Mercantile Co. (Tex. Civ. App.) 214 S. W. 843; Griffith v. Gohlman, Lester & Co. (Tex. Civ. App.) 200 S. W. 233."

The judgment will be reversed, and the cause remanded, with instructions to the clerk of the court below to transfer this cause to the district court of Burnet county, as provided by law.

Reversed and remanded, with instructions.