W. R. MALONE ET AL. v. JAS. D. DAWSON ET AL.

No. 4643.   Decided April 18, 1928.
(5 S. W., 2d Series, 965).

*Huggins, Kayser & Liddell,* for plaintiffs in error.

The undisputed proof shows that the car in question was in fact delivered by defendants through the railroad company upon its arrival in Houston to plaintiffs, and that they there accepted same and became the unqualified and unconditional owners of said car upon its arrival in Houston by paying the draft and taking up the bill of lading covering same, and, therefore, said transaction so far as delivery of said car was concerned, was fully consummated. Alexander v. Heidenheimer, 221 S. W., 943; Robinson & Martin v. Houston & T. C. Ry. Co., 146 S. W., 538; Lipshitz v. Earl Fruit Co., 265 S. W., 1048; Lee v. Gilchrist Cotton Oil Co., 215 S. W., 977.

In order to hold the venue of a suit in a county other than that of the defendant's residence, under Subd. 5 of the venue statute, the portion of the contract upon which suit is brought and which forms the basis for the recovery, must be in writing and by its terms performable in a county other than that of the defendant's residence. Geo. S. Allison & Sons v. Hamic, 260 S. W., 1037; Jordan v. West Texas Gin Co., 242 S. W., 542; Marcus v. Armer, 253 S. W., 588; Ferguson Seed Farms v. Ash, 275 S. W., 161-2.

*Baker, Botts, Parker & Garwood* and *Winston Carter,* for defendants in error. There was no error in overruling the plea of privilege, as plaintiffs in error contracted in writing to perform an obligation in Harris County, Texas, and venue is properly laid in Harris County, Texas, under Subd. 5, of old Art. 1830 (new Art. 1995), Revised Statutes of Texas. Brantley v. Thomas, 22 Texas, 271; Peoples Ice & Mfg. Co. v. Interstate Cotton Oil Refining Co., 182 S. W., 1163 (writ of error denied); Scott & Mayhall v. Lubbock Grain & Coal Co., 252 S. W., 164; Patterson v. Smith Bros. Grain Co., 252 S. W., 1058; Malloy v. Pleasants, 262 S. W., 740; Seley v. Williams, 50 S. W., 399; Bryan Cotton Seed Oil Mill v. Fuller, 57 S. W., 924; Fay Fruit Co. v. Talerico, 63 S. W., 656; Houston Cotton Oil Co. v. Trammell, 72 S. W., 244; Bell County Brick Co. v. R. L. Cox & Co., 76 S. W., 607; Callender, Holder & Co. v. Short, 78 S. W., 366; Keller v. Mangum, 161 S. W., 19; Harris v. Salvato, 175 S. W., 802; Landa v. F. S. Ainsa Co., Inc., 231 S. W., 175; Pittman & Harrison Co. v. Sanders, 234 S. W.,

412; Landa Cotton Oil Co. v. Mutual Refining Co., 242 S. W., 288; Partin & Fugate v. Hawkins, 257 S. W., 571; Shannon v. Bridgeport Brick Co., 283 .S. W., 182.

The Honorable Court of Civil Appeals did not err in reversing and rendering this case on the merits, as the question of when delivery was made to pass title was a question of the intention of the parties to the contract in issue, and the jury having found that intention, under proper issues submitted, that finding is conclusive. As to acceptance of delivery: Pontiac Shoe Mfg. Co. v. Hamilton, 44 S. W., 405; Plotner & Stoddard v. Markham Warehouse & Elevator Co., 122 S. W., 443; Mueller v. Simon, 183 S. W., 63;. J. F. Wieser v. Granger Merc. Co., 237 S. W., 328; Omaha Beverage Co. v. Temp Brew Co., 171 N. W., 704. As to intention of parties governing point of delivery and passage of title: Woods v. Half, 44 Texas, 634; Scott & Mayhall v. Lubbock Grain & Coal Co., 252 S. W., 164; Patterson v. Smith Bros. Grain Co., 252 S. W., 1058; Farmers Rice Milling Co. v. Standard Rice Co., 276 S. W., 904; Rea v. Schow & Bros., 93 S. W., 706; Farmers Cotton Oil Co. v. Wilkerson, 103 S. W., 1184; Lippman v. Jeffords-Schoenmann Produce Co., 184 S. W., 534; McGehee v. Yunker & Ronk, 209. S. W., 65; Landa Cotton Oil Co. v. Mutual Refining Co., 242 S. W., 288; Industrial Lumber Co. v. North Side Lumber & Building Co., 254 S. W., 512; Hamilton Mill & Elevator Co. v. Rayford, 255 S. W., 1017; Hatch v. Standard Oil Co., 100 U. S., 124; 23 R. C. L., Title Sales, par. 250; 24 R. C. L., Title Sales, pars. 305-306; Williston on Sales, pars. 283 and 291;. 24 American & English Encyclopedia of Law (2nd Ed.), p. 1045, par. 4, Subds. 2, 3 and 4; 35 Cyc., p. 277, pars. (a) and (b); 35 Cyc., p. 332; 35 Cyc., p. 172, par. (b); 26 L. R. A. (New Series), p. 7, footnote. As to entry of judgment: Art. 2209, Rev. Stats., 1925; Stubblefield v. Jones, 230 S. W., 720 (writ of error denied).

Mr. Justice GREENWOOD delivered the opinion of the court.

The defendants in error, doing business under the name of the Fidelity Products Company, brought this suit against the plaintiffs in error, doing business under the name of the Willis Gin Company, in the County Court of Harris County, to recover damages for an alleged breach of a contract of sale of one car of cottonseed.

The facts pleaded and proven disclosed that on September 12, 1923, defendants in error agreed to purchase from plaintiffs in error a loaded car of cottonseed at $48 a ton f. o. b. Willis, payable on

presentation to defendants in error at Houston of sight draft, the car to be shipped from Willis to defendants in error at Houston, in Harris County.

The car was consigned by bill of lading to the order of plaintiffs in error, notify defendants in error, with "Houston, State of Texas," given in the bill of lading as the car's destination. Plaintiffs in error attached the bill of lading to an ordinary sight draft on defendants in error at Houston for $1,133, being ninety per cent of the value of the cottonseed, including freight charges.

The draft was paid on September 14, 1923, and the bill of lading and draft, duly endorsed by plaintiffs in error, were then delivered to defendants in error. The bill of lading was surrendered by defendants in error to the railroad company on September 15, 1923, and the car was set on defendants in error's house-track on September 18, 1923, and was opened on September 19, 1923. On inspection by defendants in error, on September 19, 1923, the cottonseed were found to be damaged to such an extent as to be worth, less freight charges, only $583.00.

Defendants in error pleaded that "under a well-established custom in the trade, which custom was well known to defendants and plaintiffs herein, and which custom entered into said contract, the defendants agreed to deliver to plaintiffs in Houston, Harris County, Texas, at their mill, one carload of prime cottonseed, sound and dry and clean and in good condition, at the agreed price of $48.00 per ton, basis Willis. That it was a universal and well-established custom of the trade, well known to plaintiffs and defendants, that the weight and quality of a shipment of this nature was guaranteed at destination by the shipper, and that this custom entered into this contract." The evidence was conflicting on the issue tendered by the averments of custom.

As correctly set out by the Court of Civil Appeals, the jury made findings of fact substantially as follows: "(1) That the defendants loaded the cottonseed in the car at Willis on September 12, and that they were in good sound condition at the time, and were in good sound condition 'when the car arrived at Houston on September 14;' (2) That the parties to the contract intended that delivery of the car of cottonseed was to be made 'at the mill of the plaintiffs in Houston, Texas (meaning for the purpose of ascertaining weight and quality, the gross price to depend on weight and quality);' (3) That the railway company and the plaintiffs were both negligent in the handling of the car of seed 'after its arrival in Houston on

September 14;' but that the proximate cause of the damage to the cottonseed was the negligence of the railway company, 'after the arrival of the car in Houston,' in delaying the placing of the car for unloading on the industrial track at the mill of the plaintiffs."

The trial court and the Court of Civil Appeals concurred in over-ruling plaintiffs in error's plea to the venue, holding that they had no right to be sued in the county of their residence. The trial court entered judgment, on the jury's findings, denying a recovery to defendants in error. On appeal, the Court of Civil Appeals reversed this judgment and entered judgment that defendants in error recover of plaintiffs in error the difference between the amount of the sight draft and the value of the damaged seed less the freight charges (283 S. W., 634).

The application for writ of error averred that the decision of the Court of Civil Appeals was in conflict with the decision of another Court of Civil Appeals in Marcus v. Armer, 253 S. W., 588, as well as in conflict with other decisions.

After the grant of the writ of error, the case was referred to Section "B" of the Commission of Appeals. The Commission hav-ing recommended that the writ of error be dismissed for the want of jurisdiction, the case was withdrawn and is thus presented for our determination.

The Supreme Court heretofore decided that the ruling of the San Antonio Court of Civil Appeals in Marcus v. Armer, 253 S. W., 588, conflicts with the decision of the Galveston Court of Civil Appeals in Malloy v. Industrial Cotton Properties, 238 S. W., 984. The latter case decides that where a seller consigns goods under a "shipper's order notify"; bill of lading, attached to a draft drawn by the seller on the buyer for the purchase money at the goods' destination, the seller obligates himself in writing to deliver the goods at destination. The former case decides that a seller in consigning goods to a buyer under a "shipper's order notify" bill of lading attached to a sight draft on the buyer for the purchase price at the destination of the goods does not become obligated in writing to deliver the goods at destination. The seller's right to claim the privilege to be sued in the county of his residence is denied in the Malloy case and is sustained in the Marcus case, putting the two decisions in patent conflict. In the instant case, the Court of Civil Appeals in holding that the venue lay in Harris County, on the facts recited in the opinion, necessarily held, in line with the decision in Malloy's case, that the "shipper's order notify" bill of lading and

the sight draft, drawn by plaintiffs in error, did obligate the plaintiffs in error in writing to deliver the cottonseed covered by the bill of lading and embraced in the sale's contract in Harris County. This decision, on the question of venue is in conflict with Marcus v. Armer, 253 S. W., 588, just as was the decision in the case of Malloy v. Industrial Cotton Corporation. Because of the conflict, the Supreme Court has jurisdiction to determine this case. Having jurisdiction because of the conflict in the decisions, it is the duty of the Supreme Court to determine every properly presented question necessary to the right disposition of the case. Holland v. Nimitz, 111 Texas, 430.

The undisputed evidence disclosing that the car was ready for shipment when contracted to be sold at a certain price f. o. b. Willis and that all parties intended the sale to be made for cash, there is no room for doubt that the title to the cottonseed would have passed at Willis had the purchase price been there paid. The parties, however, made the sale conditioned on payment of sight draft for the purchase money less a stipulated deduction. Lang v. Rickmers, 70 Texas, 110, 7 S. W., 527. When plaintiffs in error, in fulfillment of their verbal understanding, drew the sight draft and attached it to the "order notify" bill of lading and caused the draft and bill to be delivered to defendants in error, they contracted in writing for the delivery, upon the draft's payment, to defendants in error, at Houston, of cottonseed, worth at the contract price the amount of the sight draft, plus the sum deducted, less freight. If there was any breach of plaintiffs in error's obligation, through delivery of cottonseed of quality inferior to that required by the contract, such breach arose at Houston. Defendants in error having sued for the breach of an obligation which plaintiffs in error had contracted in writing to perform in Harris County, the rulings of the courts below were correct which sustained the venue in Harris County under Subd. 5 of the venue statute. Marcus v. Armer and Berlowitz v. Standley, this day decided.

Having concluded that plaintiffs in error were legally bound, by written contract to deliver the car of seed at Houston, we come to the question whether such a delivery was effected by the transportation of the car to Houston and by the delivery there to defendants in error of the endorsed bill of lading, following payment of the sight draft. There was nothing ot prevent both title and possession of the seed passing at Willis save non-payment for the seed. We think it would do violence to the manifest intention of all parties to

recognize any further title in, or right to, the seed, in plaintiffs in error, after the draft's payment and after acquisition of the bill of lading. At that stage defendants in error could have resold the seed or could have diverted the shipment wherever they chose. Had the bill of lading consigned the seed in the first instance to defendants in error, following payment in advance for same, all must agree that the carrier would have thereafter held the seed as agent for defendants in error. How can a different effect be given to the endorsement and delivery of the "shipper's order notify" bill of lading to defendants in error after payment in full for the seed? If the carrier is at first the agent for the seller where the bill of lading, symbolizing the property, names the seller as consignee, then the carrier must be the agent of the buyer after the bill of lading, symbolizing the property, has been endorsed to, and acquired by the buyer. In truth, the doctrine that the shipper's order bill and sight draft carry an obligation in writing for the seller to deliver at destination rests on the purpose of the parties for title and possession to remain with the seller *until* the buyer pays for the seller's goods. But, there is absolutely no foundation in reason for continuing the seller's retention of title and possession or the carrier's agency for the seller beyond the time the seller has received the price of the goods and has endorsed and transferred the bill of lading to the buyer.

Professor Williston clearly lays down the rule that the property and risk of loss passed to defendants in error, on the endorsement and delivery to them of the bill of lading, on payment of the sight draft, when he says:

"In the absence of clear agreement to the contrary, the risk is with the seller, though the goods are identified, till the moment when the property is transferred. * * * The property and risk have likewise clearly passed to the buyer where an order bill is taken by the shipper in his own name if the bill is subsequently endorsed by the seller and delivered to the buyer." 1 Williston on Sales (2d Ed.), Sec. 301, pp. 693, 694; Sec. 305, p. 700.

In his summary of the Progress of Law, 1919-1920, Professor Williston observes:

"On the whole question of transfer of a property interest on shipment of the goods, the decisions on c. i. f. contracts afford an interesting comparison with cases previously cited where by contract or custom the price of goods is payable against bills of lading, but no c. i. f. clause is inserted. As has been seen, apart from statute, the

weight of American authority in those cases seems to hold that title and risk are in the seller *until* the buyer acquires the bill of lading." Harvard Law Review (May, 1921), pp. 754, 755.

The case of Forcheimer & Co. v. Stewart, 65 Iowa, 593, 54 Am. Rep., 30, is one of the few presenting the question of who must bear the risk of damage to goods while yet held by a carrier, where the vendor shipped the goods under a bill of lading to himself, which he endorsed in blank and attached to a sight draft on the vendees, and where the vendees voluntarily paid the draft and received the bill of lading. The question was determined by the Supreme Court of Iowa as follows:

"Having reached the conclusion that the goods were not delivered by the defendant to the plaintiffs by delivery to the carrier at Council Bluffs, we come to inquire whether they were delivered by delivery to them, later, of the endorsed bill of lading. In our opinion they were. The defendant, from the time of such delivery, had no right or interest in the goods, and the jus disponendi, or right of disposing of the goods, had become absolute in the plaintiffs. The goods could not be sold nor encumbered by the defendant, nor properly taken upon attachment or execution by his creditors. This being so, it would seem to follow that the risk of damage from the elements, in the absence of any agreement to the contrary, should be borne by the plaintiffs. It is true that the plaintiffs could not be considered as having had an opportunity to inspect the goods at the time when the transfer was made to them of the bill of lading. But we do not see how the plaintiffs' inability to inspect at that time could give the transfer of the bill of lading an effect different from what it otherwise would have had. The plaintiffs were not bound to accept the transfer at that time. The defendant had put the goods in transit without a tender of delivery. The plaintiffs might unquestionably have withheld payment of the draft and acceptance of the bill of lading until the goods reached their destination. But for reasons satisfactory to themselves they preferred to pay in advance. It was their right to do so if they preferred, and secure whatever advantages there might be from such payment and such acceptance. But in securing these advantages we think they took upon themselves whatever risk there might be of damage from the elements from that time forward."

In Missouri Pacific Ry. Co. v. Heidenheimer, 82 Texas, 199; 27 Am. St., 861; 17 S. W., 609, the Court declared:

"A bill of lading is regarded as a quasi-negotiable instrument. It symbolizes the property which it describes. The assignment of a bill of lading, indorsed thereon, accompanied by delivery of the instrument, passes to the assignee title to the goods, though actually in transit, as complete as if they had passed through the buyer's hands and been delivered bodily to the assignee."

Benjamin makes clear that where the title is there also is the risk of loss, quoting from Justice Blackburn in Martineau v. Kitching, 1872 L. R., 7 Q. B., 453, 454, that *"res periit domino,* the old civil law maxim, is the maxim of our law; and when you can show that the property passed, the risk of the loss prima facie is in the person in whom the property is." Benjamin on Sales, (6th Ed.) p. 451. Again, Benjamin says: "Where the property has passed, the buyer must pay the price according to the agreed terms, even if the goods are destroyed in the seller's possession. The goods are at the buyer's risk; they are *his* goods from the moment the property passes." Benjamin on Sales (6th Ed.), pp. 872, 873.

Ruling Case Law recognizes that the title passes to the vendee on payment of the sight draft and indorsement of the bill of lading, in cases like this one, when it declares:

"And it has been held that a seller consigning property to his own order, with directions to notify the buyer thereof, and sending a draft, with a bill of lading attached, requiring payment of the draft before the bill of lading is delivered, does not part with his title to the property *until* the draft is paid, and hence one who attaches the property as that of the seller before such payment acquires a lien not defeated by a subsequent payment of the draft. So ordinarily where the bill of lading is taken in the name of the seller the carrier will render itself liable to the shipper if it delivers the goods to the intended buyer, without the bill of lading being produced. *If the bill of lading taken in the seller's name is by him indorsed over and delivered to the buyer, this will be effective to pass the title to the latter."* 24 R. C. L., Sec. 308, p. 45.

There is no difficulty about this case presenting the issue of change in title alone before the loss, because at the time the property in the goods passed to the buyers there was also a change in possession. This results from the conception of the carrier as the agent of the sellers *until* the delivery to the buyers of the indorsed bill of lading after payment of the draft, but thereafter the agent of the buyers.

The Supreme Court of Georgia declared that the legal effect of taking up indorsed bills of lading to a shipment of wheat was to

divest the vendors of all title and to invest title in the vendee, the Court saying that after acquisition by the vendee of the indorsed bills of lading, "the wheat in contemplation of law, was in Woodruff's (the vendee's) possession and was his property. What he did really amounted to an acceptance of it without inspection." Woodruff v. Graddy, 91 Ga., 335; 44 Am. St., 33; 17 S. E., 264.

Where a seller shipped grain under bills of lading issued to him with directions to notify the buyer which were attached to drafts and which were delivered to the buyer on payment of the drafts, the subsequent loss of the grain in the Galveston flood, before its actual receipt by the buyer, was held to fall on the buyer, notwithstanding the contract of sale of the wheat provided that the wheat's delivery was not to be perfected until it had been inspected and weighed. In an opinion by Judge Batts for the majority of the Circuit Court of Appeals for the Fifth Circuit, it is declared that: "It is quite certain that the incidents 'of ownership passed to the Elevator Company by the payment for the property and the receipt of the bills of lading, and the loss must necessarily fall upon it." Pampa Grain Co. v. Oklahoma City Mill & Elevator Co., 248 Fed. Rep., 479.

The Court of Civil Appeals at Fort Worth and San Antonio reached similar conclusions in Orthwein's Sons v. Wichita Mill & Elevator Co., 32 Texas Civ. App., 600; 75 S. W., 364, and Grayson County National Bank v. Nashville C. & St. L. Ry., 79 S. W., 1096.

Having declared that the legal import of the written contract between the parties was such as to pass title and possession of the car of seed to defendants in error, on delivery to them of the bill of lading, duly indorsed, in connection with payment of the sight draft, such written contract cannot be added to or varied by averment or proof of a contrary custom, as was attempted in this case. The law is rightly announced on this point in an opinion of the Commission of Appeals by Judge Spencer in these words:

"Applying the rule of law stated to these facts, the legal import of the contract is to pass the title by operation of law to the defendants in error at point of origin. The effect of the custom pleaded by vendee was to change the rights and liabilities of the parties as thus fixed by law. This cannot be done. The legal import of a contract, as distinguished from its express terms, cannot be varied by usage. That is, where judicial construction has affixed to a contract a certain meaning and has defined the rights and liabilities thereunder, this legal effect or import cannot be varied by proof of

a usage giving to the contract a different meaning. 17 Corpus Juris, 512." Alexander et al. v. Heidenheimer et al., 221 S. W., 944.

The law was similarly declared in Mercantile Banking Co. v. Landa, 33 S. W., 681, where the Court of Civil Appeals, through Justice Fisher, said:

"The law gives to a transfer by endorsement of a bill of lading, accompanied by a delivery of it, the effect of passing title to the property shipped. Railway Co. v. Heidenheimer, 82 Texas, 199, 17 S. W., 608. A title thus acquired is as effectual in law as it would be if based upon an express and completed contract of sale.

Evidence of custom is not admissible to vary or control an express contract. Moore v. Kennedy, 81 Texas, 144, 16 S. W., 740."

Since the evidence was conflicting as to whether the cottonseed here involved were damaged before or after the payment of the sight draft and delivery of the bill of lading to defendants in error, the Court of Civil Appeals was not warranted in rendering judgment for defendants in error.

No error is presented by defendants in error's cross-assignments.

The judgments of the County Court and of the Court of Civil Appeals are reversed and the cause is remanded to the County Court for a new trial.

*Reversed and remanded.*