**CURTIS PEANUT CO., Inc., Appellant,**

v.

**UNITED SALES CO., Appellee.**

No. 15010.

Court of Civil Appeals of Texas. Dallas.

Oct. 14, 1955.

Woodrow Curtis, Pearsall, Storey, Armstrong & Steger, Dallas, John Peace and Edward W. Penshorn, San Antonio, for appellant.

Bradford & Pritchard, Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal from an order overruling a plea of privilege under Art. 1995, subds. 5 and 23, V.A.C.S.

Appellee, a corporation with its headquarters in Chicago, Illinois, filed suit in Dallas County, Texas, against appellant, a Texas corporation, with its principal office in Frio County, Texas, to which county appellant-defendant sought to have the case transferred for trial. Appellee's suit is for damages resulting from an alleged breach of contract for the sale and delivery by appellant to appellee of thirteen cars of peanuts.

In appellee's behalf the contract of purchase was negotiated by Earl L. Speer & Co., Inc., brokers, who maintain offices in Chicago, Illinois, and Dallas, Texas. Robert W. McGregor is in charge of the Dallas office of Earl L. Speer & Co., Inc., brokers, and it was he who acted as representative and spokesman for appellee in its dealings with appellant.

On September 7, 1954 McGregor at Dallas in a long distance telephone conversation with Ned Curtis, appellant's president, at Pearsall, Texas, agreed in behalf of appellee to purchase from appellant the thirteen cars of peanuts, of approximately 50,000 pounds per car for a consideration of 19¼ cents per pound on the first carload and 19⅜ cents per pound on each of the other carloads, the first carload to be shipped September 7, 1954 and a carload to be shipped each week thereafter until all thirteen carloads had been delivered.

In confirmation of this telephone conversation McGregor by mail submitted to appellant a written memorandum detailing the terms of their agreement, to which memorandum appellant orally agreed except as to terms of payment. As to terms of payment, appellant insisted that the contract should be: "Sight draft, shipper's order—notify—bill of lading attached." After obtaining the approval of his client in Chicago, McGregor, the broker, at Dallas, in another long distance telephone conversation with Curtis at Pearsall, accepted the above terms of payment as part of the contract.

A day or two later McGregor gave appellant instructions to ship the first car to Alford Refrigerated Warehouses at Dallas, Texas. Appellant did so, but prior to delivery drew a sight draft on appellee payable at Chicago, Illinois, for $9,846.37, the purchase price of 50,880 pounds of peanuts. Attached to the draft was an order bill of lading and appellant's invoice which referred to appellee's confirmation memorandum which appellant had not signed, but had orally agreed to, except as to the terms of payment as heretofore stated. Appellee paid the sight draft in Chicago, Illinois. But upon arrival of the car at Alford's Refrigerated Warehouses in Dallas an inspection revealed that the car contained only 41,739 pounds of peanuts, a shortage of 8,873 pounds. Therefore by paying appellant's sight draft of $9,846.37 appellee overpaid appellant in the amount of $1,719.-14 on the first car of peanuts.

A few days later a second car of peanuts was shipped by appellant to Alford Refrigerated Warehouses at Dallas under similar circumstances and instructions. The sight draft on the second car was paid in the amount of $9,846.37, which as it turned out was an overpayment of $985.99 on the second car due to a weight shortage. Appellant admitted the shortage and overpayments on the two cars and promised to reimburse appellee, but has not done so. A short time after the delivery of the two cars appellant notified appellee that it would not ship any more peanuts under the contract.

Meantime appellee, anticipating delivery of thirteen cars as called for in its contract with appellant, had resold and agreed to deliver five of the cars of peanuts to Tom Houston Peanut Company of Columbus, Georgia. Appellee alleges that in order to fulfill its contract with Tom Houston Peanut Company it was necessary to purchase peanuts from other sources.

In this suit appellee seeks reimbursement for the overpayment on the two cars of

peanuts delivered by appellant, and damages for breach of contract for appellant's failure to deliver the other eleven cars.

Appellant's points on appeal assert in substance that (1) the contract sued on by appellee does not expressly obligate appellant to perform in Dallas County, hence does not meet the requirements of Art. 1995, subd. 5, V.A.C.S.; (2) the evidence is insufficient to sustain a finding that appellee's cause of action arose in Dallas County, hence does not meet the requirements of Art. 1995, subd. 23, V.A.C.S.; and (3) there is no evidence to support a finding that appellee, a foreign corporation, has legal capacity to bring this suit in Texas.

Our Supreme Court has heretofore held that shipper's order—notify bills of lading attached to sight drafts constitute written contracts on the part of a seller to deliver at the designated place commodities of an agreed weight and grade at the contract price; that invoices accompanying shipper's order bills of lading attached to sight drafts constitute written guarantees by sellers to deliver at the designated place commodities equal in value to the amount of the drafts; and that a buyer's suit for the difference between the value of commodities purchased and amount of drafts paid before receiving shipments short in the weight contracted for, is properly brought in the county of delivery under Art. 1995, subd. 5, V.A.C.S. Marcus v. Armer, 117 Tex. 368, 5 S.W.2d 960, 60 A.L.R. 672; Berlowitz v. Standley, 117 Tex. 362, 5 S.W.2d 963; Malone v. Dawson, 117 Tex. 377, 5 S.W.2d 965, 60 A.L.R. 665.

■ The above subdivision 5 was amended in 1935, but our Supreme Court had held that the only purpose of the amendment was "to restrict the scope of the venue exception in question to cases in which the county of performance of the obligation in suit or a specific place therein should be expressly named in the contract." Rorschach v. Pitts, 151 Tex. 215, 248 S.W. 2d 120, at page 123. See also Harry F. Frey & Co. v. W. D. Lacy Feed Co., Tex. Civ.App., 272 S.W.2d 765, at page 768. The invoices and the shipper's order notify bills of lading in the instant case meet the requirements of the subdivision as amended for they expressly provide that the peanuts in question are being shipped to Alford Refrigerated Warehouse, 318 Cadiz Street, Dallas, Texas. Appellant's points Nos. 1 and 2 are overruled.

■ Appellant's offer to sell the thirteen cars of peanuts at the named prices subject to the named terms of payment was accepted in Dallas County, Texas, by McGregor, the broker, in behalf of appellee in a long distance conversation with appellant's president who was talking from Pearsall, Texas. Under such circumstances it is to be considered that the contract was made in Dallas County. Traders Oil Mill Co. v. Arnold Bros. Gin Co., Tex.Civ.App., 225 S.W.2d 1011, and the suit comes within the purview of Art. 1995, sec. 23, V.A.C.S. Stone Fort Nat. Bank v. Forbess, 126 Tex. 568, 91 S.W.2d 674, at page 676. We overrule appellant's point No. 6.

■ In its point No. 7 appellant contends that appellee has not shown that it has legal capacity to maintain this suit, since it is a foreign corporation and does not have a permit to do business in this State. However the undisputed evidence shows that the subject matter of the suit is an interstate transaction, consequently no permit to do business in Texas was required of appellee. Appellant's point No. 7 is overruled.

Appellee concedes that in this case venue in Dallas County, Texas, cannot be maintained under Art. 1995, subd. 7, and that appellant's points Nos. 3, 4, and 5, are well taken. However we deem it unnecessary to discuss said points since we have held that venue may be maintained in Dallas County under Art. 1995, subds. 5 and 23.

The judgment of the trial court is affirmed.