**TERRELL HILLS BAPTIST CHURCH et al., Appellants,**

**v.**

**Tom E. PAWEL et al., Appellees.**

**No. 10360.**

Court of Civil Appeals of Texas.

Austin.

Jan. 4, 1956.

Ralph Cadwallader, Oliver & Oliver, San Antonio, for appellants.

Davis, Clemens, Knight & Weiss; George H. Spencer and F. Nolan Welmaker, San Antonio, for appellees.

GRAY, Justice.

Appellees, individually and as representatives of a class, brought this suit against appellants Terrell Hills Baptist Church, a corporation, and its trustees. Wilshire Development Company was also a party to the cause but it is not affected by the judgment rendered and is not a party here. Appellees and the church own lots or tracts of land in Wilshire Village, a subdivision of the City of San Antonio and the purpose of the suit was to enforce by injunction restrictive covenants contained in the title to said lots restricting their use to residential purposes only.

Wilshire Development Company was the subdivider and it appears that all of the

property in question was a part of a tract purchased by the Development Company for a residential subdivision. The subdivision was platted, the plats were recorded in the deed records of Bexar County and the lots were made subject to a mutual restrictive covenant which the parties agree is substantially as follows:

"No lot or building within the subdivision shall be used or occupied for other than private residence purposes."

The church was issued a charter as a Texas corporation February 4, 1955. By deed dated February 14, 1955, and filed for record February 24, 1955, Wilshire Development Company conveyed to it the property in question here which property was unimproved. This deed recited:

"Provided, however, that this conveyance is made subject to conditions and restrictions as contained in instruments recorded in Volume 3133 at page 73 and in Volume 3367 at page 409 of the Deed Records of Bexar County, Texas, if still effective."

The recorded plats contained provisions substantially as follows:

"These covenants are to run with the land, and shall be binding upon all persons claiming under them until January 1, 1975, at which time said covenants shall be automatically extended for successive periods of ten years, unless, by vote of the majority of the then owners of the lots, it is agreed to change said covenants in whole or in part. The ownership of each lot shall be entitled to one vote."

At the time this suit was filed the church had begun construction of a church and school building on the land acquired by it. On March 4, 1955, appellees filed their first amended original petition wherein they prayed that further construction be enjoined. On that date the court set for hearing on March 11, 1955, appellees' application for a temporary injunction. At this hearing and by agreement of the parties further construction was enjoined until a further order of the court.

At a nonjury trial a judgment was rendered adjudging the restrictive covenants above mentioned valid and effective as to all parties to this cause and perpetually enjoining appellants from using the land for purposes other than residential.

Findings of fact and conclusions of law were not requested and none were filed.

Appellants say that the trial court's judgment should be reversed because: (1) the facts show that appellees waived their right to injunction, are barred by laches, and by their own conduct are estopped; (2) the restrictive covenants are void and contrary to public policy, and (3) the undisputed evidence shows that it was the general custom prevailing that notwithstanding such restrictive covenants church and school houses were permitted and that such custom became a part of the contract.

In the early part of October, 1954, the church through its pastor began a religious canvass of Wilshire Village; the homes there were visited and the occupants of the homes were informed that a church would be built on the site in question and that it was hoped that construction could begin in the early part of the following January. It was not determined whether the persons contacted in the homes were the owners of the property or whether they occupied the same in some capacity other than as owner. The restrictive covenants were not discussed and no inquiry was made if there were objections to the construction of the church. Appellants also placed a sign on the site of the proposed construction which read:

"Future Home Of
Terrell Hills
Baptist Church
Dr. John D. Brown
Pastor

Meeting temporarily at
1003 Rittiman Road
Sam Houston Village
Shopping Center"

The proposed construction of the church on the site in question was also advertised

by hand bills, newspapers, local radio announcements and street parades.

On February 20, 1955, the site was graded and leveled; on the 23rd holes for concrete piers were bored and on the 26th and on the 28th the piers were poured. On March 2nd or 3rd appellants were advised by their attorney that appellees were threatening to file suit to enforce the restrictive covenants. The construction was continued until March 11th when the above mentioned injunction issued. The contractor of the job testified that a large portion of the construction was done after March 2nd. The pastor of the church testified that:

"We have poured $6000 and some odd dollars into the ground there. And the—for instance the ducts and the air conditioning units, the ducts will not be any good to anyone else, we have got to buy them. The tile is up there and it just hadn't been paid for, but the bill has just come. There is $15,000.00 that we will have to pay."

This witness said there was also about $700 worth of plumbing put in the construction. He also said that when notice of objections was first received most everything had been ordered or was on the ground.

Appellants' position here is explained, at least in part, by the following question addressed to the pastor and his answer:

"Q. Would you have built that building and spent that money if you had had any timely objection and protest made to you?

"A. That is why we were so careful. That is exactly it. We knew it was restricted, but we knew it was the custom and usage. Why, five blocks away, the little Episcopal church has built and it was restricted."

The witness did not place the Episcopal Church in Wilshire Village and the president of the Development Company testified that nothing other than residences were there. However, under the evidence here the location of this church would be im-

material. Stewart v. Welsh, 142 Tex. 314, 178 S.W.2d 506.

In Curlee v. Walker, 112 Tex. 40, 244 S.W. 497, 498, the Court said:

"The correct rules that govern covenants of the character set out in the deeds to this restricted district are well stated by Judge Higgins in the case of Hooper v. Lottman (Tex.Civ.App.) 171 S.W. 270, as follows:

"'The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of purchasers of lots are recognized and enforced by courts of equity at the instance of the original grantor or subsequent purchasers. So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may

be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase.' "

■ Appellants do not argue that appellees did not purchase their individual lots and build their homes under the general scheme or plan of improvement provided for in the restrictive covenants. For this reason and because this general plan or scheme is clearly evidenced by the plats of the subdivision and the deeds to purchasers of lots therein appellants obligated themselves by the purchase of the property in question to restrict its use to residential purposes only. Curlee v. Walker, supra. This is true unless it can be said from the facts and circumstances here appellants are relieved of this obligation.

■ Waiver is the intentional surrender of a right known to exist and usually it is a question of fact. It becomes a question of law only when facts to constitute it are admitted or are clearly established. 43–B Tex.Jur., Sec. 14, p. 491. It cannot be said from the evidence here that as a matter of law appellees intentionally surrendered their right to enforce the restrictive ordinance. On the other hand the facts and circumstances in evidence support the trial court's implied finding that they did not.

In Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932, the Court said:

"On the question of estoppel we find that 'In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.' 31 C.J.S., Estoppel, § 67, page 254. Also, 'Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel.' Id., § 77, page 282 et seq."

■ Further it has been said that in order for an estoppel based on silence or inaction to be available as a defense " 'There must be some element of turpitude or negligence connected with the silence or inaction by which the other party is misled to his injury.' " Humble Oil & Refining Co. v. Trapp, Tex.Civ.App., 194 S.W.2d 781, 786. Er. ref.

Appellants do not charge appellees with false representations or with concealment of material facts; they say that they knew of the restrictions and also knew " * * * it was the custom and usage * * *" to build churches and schools in restricted areas. They do not say that appellees remained silent with any intention that such silence should be acted on.

Applying the above tests to the facts here it cannot be said that appellees are estopped to enforce the restrictions contained in

their deeds and appellants' deed dated February 14, 1955.

▮▮ The defense of laches is usually a question of fact and the burden is on the party asserting the defense to establish it by proof. In Arrington v. Cleveland, Tex. Civ.App., 242 S.W.2d 400, 403, er. ref., the Court quoted from 30 C.J.S., Equity, § 117, in part as follows: " ' * * * the law does not demand the utmost exertion of diligence in repelling a hostile invasion of one's rights deliberately undertaken with full knowledge of all the facts.' " We think the trial court was authorized to find that the defense of laches was not established.

Appellants cite Barksdale v. Allison, Tex. Civ.App., 210 S.W.2d 616. There an injunction was denied where there was a delay of one month in seeking to enforce a restrictive covenant during which time the construction was completed. The evidence showed that prior to beginning construction the owner advised the plaintiff of his intention and that the plaintiff told him to apply for a permit and that he would then know whether he could construct the building. That holding is not applicable to the facts here.

▮▮ The courts of Texas and of other jurisdictions appear to have established the rule that the erection of a church within a restricted area violates a covenant restricting the use of property in the area to residential purposes only. Cannon v. Ferguson, Tex.Civ.App., 190 S.W.2d 831; Chandler v. Darwin, Tex.Civ.App., 281 S.W.2d 363; Annotations in 13 A.L.R.2d 1239. Appellants' point 2 is overruled.

▮ Appellants' point 3 cannot be sustained. In addition to the pastor of the church whose evidence is quoted supra two witnesses testified for appellants on the issue of usage and custom. Both were lawyers, one was uncertain as to any specific church having been built in violation of restrictive covenants because he had not examined the land title and could not say whether the covenant had been waived. The other witness testified to only one church having been so built. We think the proof falls far short of showing the alleged usage or custom was general, or that it was notorious or known. 42 Tex.Jur., Secs. 4, 5, and 6, pp. 832 and 833. Further as noted supra the meaning of contracts (purchases) of the kind here considered has been judicially determined together with rights and liabilities thereunder.

In Malone v. Dawson, 117 Tex. 377, 5 S.W.2d 965, 969, 60 A.L.R. 665, the Court said:

"The law is rightly announced on this point in an opinion of the Commission of Appeals by Judge Spencer in these words:

" 'Applying the rule of law stated to these facts, the legal import of the contract is to pass the title by operation of law to the defendants in error at point of origin. The effect of the custom pleaded by vendee was to change the rights and liabilities of the parties as thus fixed by law. This cannot be done. The legal import of a contract, as distinguished from its express terms, cannot be varied by usage. That is, where judicial construction has affixed to a contract a certain meaning and has defined the rights and liabilities thereunder, this legal effect or import cannot be varied by proof of a usage giving to the contract a different meaning. 17 Corpus Juris, 512.' Alexander v. Heidenheimer (Tex.Com.App.) 221 S.W. [942] 944."

Also see Miller v. Gray, 136 Tex. 196, 149 S.W.2d 582, 141 A.L.R. 1237.

The judgment of the trial court is affirmed.

Affirmed.