PEOPLE'S ICE & MFG. CO. v. INTER-
STATE COTTON OIL REFINING
CO.  (No. 7420.)*

(Court of Civil Appeals of Texas. Dallas.
Jan. 22, 1916.  Rehearing Denied
Feb. 19, 1916.)

1. VENUE ⬥➡7—CONTRACT IN WRITING—BRO-KER'S MEMORANDUM.

Where a broker negotiates a sale by phone, and reduces to writing and signs a memorandum thereof, sending a copy to each of the parties, which they retain without objection, the contract is in writing, within Rev. St. 1911, art. 1830, subd. 5, as to venue, where a person has contracted in writing to perform an obligation in a certain county.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 13–16; Dec. Dig. ⬥➡7.]

2. VENUE ⬥➡7—CONTRACT IN WRITING—BILL OF LADING AND ATTACHED DRAFT.

Where oil was shipped by defendant to G. county, for plaintiff, with draft on plaintiff attached to the bill of lading, which obligated plaintiff to deliver possession of the oil in G. county, there was a contract in writing to perform an obligation therein, within Rev. St. 1911, art. 1830, subd. 5, as to venue, so as to permit plaintiff to sue in G. county to recover the price paid, because of the oil not being as agreed.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 13–16; Dec. Dig. ⬥➡7.]

3. TRIAL ⬥➡350—SPECIAL ISSUES—IMMATE-RIAL MATTER.

The proof being that the oil was not sold by sample, but as "prime crude cotton seed oil cold pressed," defendant, in an action to recover the price because of the oil not being as sold, was not entitled to submission to the jury of the question of it being like the sample in the broker's possession.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. ⬥➡350.]

4. SALES ⬥➡358—CONTRACT—QUALITY—PLACE OF DELIVERY.

Where a seller agreed to deliver to the buyer in a certain county oil of a certain grade, which it failed to do, it is immaterial what grade it delivered to the carrier in another county.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1049–1055; Dec. Dig. ⬥➡358.]

5. SALES ⬥➡59—CONTRACT—BROKER'S MEMO-RANDUM.

The parties to a sale of oil having received and retained the broker's memorandum of sale, stating that the contract was made subject to the rules of a certain association, are bound thereby; there being no fraud or misrepresentation, though in the negotiation nothing was said of such rules.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 159; Dec. Dig. ⬥➡59.]

Appeal from District Court, Grayson County; Jas. P. Haven, Judge.

Action by the Interstate Cotton Oil Refin-ing Company against the People's Ice & Manufacturing Company.  Judgment for plaintiff, and defendant appeals.  Affirmed.

Jones & Hassell, of Sherman, and Rentfro & Cole, of Brownsville, for appellant.  Head, Dillard, Smith, Maxey & Head and J. F. Holt, all of Sherman, for appellee.

RAINEY, C. J.  Appellee, a domestic corporation, with its principal place of business at Sherman, in Grayson county, Tex., instituted this suit against appellant, another domestic corporation, with its office and place of business in Brownsville, Cameron county, Tex., to recover as damages the entire purchase price paid by appellee to appellant for the purchase of a tank car of crude cotton seed oil, together with certain charges for freight and demurrage.  Appellee alleged that it had purchased two tank cars of prime crude cotton seed oil, cold pressed at 46¼ cents per gallon, f. o. b. Brownsville, said tank cars to be shipped at specified times in tanks furnished by appellee and to be paid for by sight draft on appellee with bills of lading attached for full amount of invoice. The contract plead by appellee was alleged to be in writing, and was also alleged to have been made subject to the rules of the Texas Cotton Seed Crushers' Association. The tank car in question was loaded with the oil in Brownsville, and the draft of appellant for the full amount of the purchase price of the oil was paid by appellee.  Appellee in its petition alleged that the grade and quality of the oil was not of the character it had purchased, and that it had thereby been damaged in a sum representing the difference in the value of the oil received and the value of the oil it should have received had same been up to the standard in quality.  Appellee also alleged that this difference was the entire purchase price paid by it, together with the freight and certain demurrage charges; the tank car not having been unloaded, but remaining in Sherman on the tracks of the railroad.  The case was submitted to the jury on special issues and a verdict returned, upon which verdict a judgment was entered by the court for the sum of $4,352.23; said sum being the said entire purchase price paid by appellant for the oil, together with the freight, demurrage charges, and interest.  Appellant appeals to this court.

[1] Appellant's first assignment of error is: "The court erred in overruling this defendant's plea of privilege in this cause on the ——— day of October, 1914, for the reason that the undisputed evidence in this case, on the hearing of said plea of privilege, showed that this defendant was a domestic corporation with its only office and place of business in Cameron county, Tex., and with no officers or agents residing in any other county than in said Cameron county, Tex., and that plaintiff's cause of action was controlled by none of the subdivisions of article 1830 of the Revised Statutes of 1911, permitting suit to be maintained against de-

---

fendant in some county other than its residence, all of which appear from defendant's bill of exception No. 1, which bill of exception is here referred to."

The first proposition submitted is:

"A contract of sale conducted by a broker in which the negotiations for same are conducted through telephone communications and telegrams had by the purchaser and seller, respectively, with said broker, and in which, through the medium of said broker, an agreement is finally reached by which the buyer becomes the purchaser from the seller of a tank car of oil, such contract is not a contract in writing within the meaning of subdivision 5 of article 1830 of the Revised Statutes of Texas of 1911, notwithstanding after said contract has been consummated between the principals the broker undertook to make a written memorandum of the terms of sale."

The facts presented in the petition are, in effect, that appellant's principal place of business was at Brownsville, Tex., and that it had no agent in Grayson county. The first transaction was initiated between the parties by John H. Hailey & Co., brokers, of Houston, Tex. (by phone), with whom appellant had placed its samples of oil, whereupon Hailey & Co. wrote in triplicate the following memorandum, sending one copy to each of the parties, and retaining one copy; the one received by appellant being received by it before the oil was shipped. The memorandum reads as follows:

"Houston, Texas, Nov. 3, 1913.

"People's Ice & Mfg. Co., Brownsville, Texas —Gentlemen: In accordance with exchange of communications, we beg to confirm having this day sold to Interstate Cotton Oil Refining Co., Sherman, Texas, the following for your account: Two (2) tanks 160 brl. capacity, prime crude cotton seed oil cold pressed, at 46¼c. per gallon, f. o. b. Brownsville, Texas.

"Shipment: One by fifteenth; one November.

"Tanks: To be furnished by buyer.

"Routing: Buyers.

"Terms: Sight draft on buyer, bills of lading attached, for full amount of invoice.

"Commission: 10c. per bbl. to be paid by sellers.

"This contract is made subject to the rules of the Texas Cotton Seed Crushers' Association— made in triplicate; one copy being sent to the seller, one to the buyer, and one retained on file in this office. Thanks.

"Yours very truly,      John H. Hailey Co.,
                               "As Brokers Only."

Appellee's manager testified:

"We received the broker's contract and accepted it as the contract and knew no other. Neither defendant nor any one else notified us that it was not the contract."

Appellant's manager testified:

"On cross-examination the witness stated that he received the broker's contract, a copy of which is set out in the petition, in due course of mail, and he made no exceptions to the terms of the contract; that said witness, as agent for defendant, sold through John H. Hailey, as brokers, two tank cars of prime crude cotton seed oil to the Interstate Cotton Oil Refining Company of Sherman, Tex.; that said deal through said broker was consummated by means of telephone communications, telegrams, and letters on or about the 3d day of November, 1913; that all the telegrams, letters, and what the brokers style a memorandum of contract were attached to his deposition and made exhibits thereof."

Said oil was shipped with sight draft attached to bill of lading, which draft was presented to appellee and paid before the shipment reached Sherman.

Appellee alleged that this contract was made by the said Hailey Company as brokers, and was fully authorized by appellant; that appellant received the copy thereof sent to it by said broker, he executing the same in triplicate, one being sent to appellant, one to appellee, and one retained on file in the broker's office; that said written contract truly stated the terms of the sale; that appellant accepted said contract as written by said broker, who was, in fact, the agent of appellant, and did not make the slightest objection thereto; that appellant acted on said contract shipping both tanks of oil sold under the terms thereof, and that, acting thereon, it shipped the tank of oil in controversy and collected the purchase price thereof, all this without making any objection to said contract, and that it is now estopped, and that under certain rules of the Texas Cotton Seed Crushers' Association, subject to which said contract was made, the weight and quality of the oil was guaranteed at destination, Sherman, in Grayson county; that said oil was shipped under a shipper's order bill of lading with draft for purchase price attached, which draft was paid in Grayson county; that when the car arrived at Sherman, which it did after the draft reached Sherman, and after it had been paid without any opportunity of inspection of the oil, it was found not to be of the quality sold; that, in fact, it was so contaminated with mineral oil that it was utterly worthless for any purpose; that it could not be unloaded from the car and mixed with cotton seed oil, because so to do would destroy the oil with which it was mixed.

Under the evidence in this case we are of the opinion that the memorandum executed by Hailey Company constituted a written contract between the parties and formed the basis for the right of action. Hailey was acting for both parties, and, as such, he was authorized to reduce the terms of the trade to writing and place his signature to the same, which became the contract of both parties and binding upon both. Both evidently relied on it as the only contract between them. Had they not relied on it it was incumbent on them to disavow it when it was first received, and, not having done so, at that time both are shut off from now doing so, but must abide thereby. Said contract by its terms required the performance thereof partly in Grayson county, which gave appellee a right of action for its breach in said county. Floresville v. Refining Co., 55 Tex. Civ. App. 78, 118 S. W. 194.

[2] For another reason we think venue was properly laid in Grayson county; that is, that the oil was shipped by appellant to Sherman in Grayson county for appellee with

draft drawn on appellee attached to the bill of lading, which obligated the appellant to deliver possession of oil in Grayson county. Seley v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399; Floresville v. Refining Co., supra; Harris v. Salvato, 175 S. W. 802; Callender v. Short, 34 Tex. Civ. App. 364, 78 S. W. 366; Planters' Co. v. Whitesboro Co., 146 S. W. 225. The plea of privilege was properly overruled.

[3] Appellant complains that the court erred in not submitting to the jury the following requested question, to wit:

"Was the oil in question, when loaded into the tank car and delivered by defendant to the carrier in Brownsville, Tex., of the grade and quality of the sample of same in the possession of the broker, John H. Hailey, when the sale was consummated with the plaintiff?"

The undisputed proof shows that the oil was not sold by sample, and also shows it was sold by appellant as "prime crude cotton seed oil cold pressed." We think no issue was raised whether the oil when loaded in the car at Brownsville was of the same grade and quality of the sample in the possession of the broker, Hailey, when the sale was consummated?

[4] Error is also assigned for refusing the following:

"Was the oil, when loaded into the tank car at Brownsville, Tex., and delivered in said city by defendant to the carrier, of the grade known as prime crude cotton seed oil?"

The contract obligated the appellant to deliver "prime crude cotton seed oil" at Sherman, Grayson county, and it is immaterial what grade was delivered to the carrier; the evidence showing that the grade delivered at Sherman was not the kind contracted to be delivered.

[5] Error is assigned in the action of the court for refusing to submit to the jury the following:

"Question No. 1: Did defendant or its agent, S. C. Tucker, at the time of the making of the contract of the sale of the said tank car of oil at the time the controversy arose with reference to the grade of said tank car of oil, know the rules of the Texas Cotton Seed Crushers' Association? Answer.

"Question No. 2: Did defendant or its agent, S. C. Tucker, after the receipt from the broker of what purports to be a written memorandum of the contract for the sale of said oil, with a knowledge of the significance of the term, 'Subject to the rules of the Texas Cotton Seed Crushers' Association,' acquiesce with said clause in said contract? Answer.

"Question No. 3: After the receipt by defendant and its agent, S. C. Tucker, of the said memorandum from the broker, John H. Hailey, which memorandum stated that said sale was subject to the rules of the Texas Cotton Seed Crushers' Association, would an ordinarily prudent man, situated and circumstanced as the said S. C. Tucker was, have been put on inquiry to ascertain what was the significance of such clause in said contract? Answer.

The proposition made by appellant is:

"Where a trade is consummated by a broker between the seller and the purchaser of a commodity, and, where after said trade has been consummated, the said broker undertook to make a written memorandum of the terms of the contract thus entered into between the seller and the purchaser and inserted in said written memorandum a clause making said trade subject to the rules of the Texas Cotton Seed Crushers' Association, and where the undisputed evidence disclosed that at the time of the consummation of said trade through the medium of said broker no mention was made of said trade being subject to such rules, and where the undisputed evidence further showed that, when the seller received such written memorandum, he made no objection by reason of such clause being thus inserted, and where upon the trial of a suit based on said contract of sale in which it is a material inquiry as to whether such contract should be governed by the rules of such association, it was error for the court to refuse to submit to the jury for its findings the issues raised by the requested charge forming the basis of this assignment; said suit being submitted on special issues, and such issues embraced in said charge being raised by the pleading and the evidence."

In answer to this assignment we adopt the proposition of appellee as follows:

"No fraud or misrepresentation on the part of any one making said contract is claimed by appellant. Appellant, through its manager and authorized officials, accepted said broker's contract as the contract of sale to appellee in this case. Said contract expressly and very plainly shows to have been made subject to the rules of the Texas Cotton Seed Crushers' Association, and after accepting the same it is immaterial whether: (1) At the time of making the contract or at the time the controversy arose with reference to the grade of oil in the tank car appellant knew said rules; or (2) whether S. C. Tucker, with a knowledge of the significance of the term 'subject to the rules of the Texas Cotton Seed Crushers' Association,' acquiesced therein; or (3) whether an ordinarily prudent person situated as he was would 'have been put on inquiry to ascertain the significance of said clause of the contract.' The reference to said rules was amply sufficient to make the same a part of the contract."

Appellant's president and manager testified as follows:

"I did not make any objection to the clause there that reads: 'This contract is made subject to the rules of the Texas Cotton Seed Crushers' Association—made in triplicate; one copy being sent to the seller, one to the buyer, and one retained on file in this office.' I did not make objection to any living man. I recall that that came to me. That is dated November 3, 1913, and reached me the 4th or 5th. I did not tear it up, but kept it. I attach it to my deposition in this case."

As the contract specifically referred to the rules of the Texas Cotton Seed Crushers' Association, appellant is estopped from avoiding the effects of said rule when he had the opportunity of informing himself as to its import; there being no fraud or misrepresentation pleaded or proven. Box Co. v. Spies, 109 S. W. 432.

Appellant's assignments of error from 5 to 14, inclusive, have all been duly considered by us, and we conclude they present no reversible error.

The court submitted all material issues presented by the pleadings and evidence. These were answered by the jury in favor of the appellee. The evidence supports the findings of the jury, and the judgment is affirmed.

Affirmed.