## J. S. COSDEN, Inc., v. MEINECKE.

### No. 2500.

Court of Civil Appeals of Texas. El Paso. Feb. 26, 1931.

Rehearing Denied March 19, 1931.

Brooks & Woodward, of Big Spring, and Ike A. Wynn and Herbert Hedick, both of Fort Worth, for appellant.

Davidson & Smith, of Ozona, and Collins, Jackson & Snodgrass, of San Angelo, for appellee.

HIGGINS, J.

The Stine Drilling Corporation and J. S. Cosden, Inc., entered into a contract by the terms of which the former agreed to drill an oil well for the latter to a certain depth.

Due to unsatisfactory conditions. which need not be stated, the contract, by mutual consent, was canceled about March 1, 1928, and the Cosden Company undertook to complete for itself the drilling of the well. At that time the Stine Corporation was indebted to appellee Meinecke for goods, wares, and merchandise theretofore sold and delivered to such corporation in connection with the drilling contract. Such corporation was also indebted in different sums to E. E. Turner, B. A. Lusk, Leo Hart, and Jim Chapman for labor theretofore performed in the drilling of the well. The four individuals last named continued work upon the drilling job after March 1st, as employees of J. S. Cosden, Inc. About April 16, 1928, the well was nearing completion, and the sums due the individuals named had. not been paid. About that date Turner, Lusk, Hart, and Chapman quit work upon the well and went to Ozona, where they and Meinecke consulted Hon. Houston Smith, an attorney at law, with the view of filing suits to recover the sums due them prior to March 1, 1928, by the Stine Drilling Corporation.

It was tentatively agreed that the laborers mentioned would cease work on the well and they and Meinecke would file suits to recover the sums due them on March 1, 1928, and attach the properties. Thereupon Wilbur Williamson, a representative of J. S. Cosden, Inc., agreed for said company to pay said sums, if the parties would refrain from their threatening action and the laborers resume work upon the well. This they did, and the well was completed April 25, 1928, as a dry hole. Said sums not having been paid, Turner, Lusk, Hart, and Chapman assigned their claims to Meinecke who brought this suit against J. S. Cosden, Inc., Stine Drilling Corporation, and its president, H. I. Cline, to recover the moneys due as aforesaid to Meinecke and his assignors.

Upon trial without a jury Meinecke recovered judgment for $3,813.40 against all defendants, from which J. S. Cosden, Inc., appeals.

Appellant presents this appeal upon two propositions, as follows:

"1. The testimony of the witnesses, B. A. Lusk, E. E. Turner, Leo Hart, Jim Chapman, Jr., Chris Meinecke and Houston S. Smith, to the effect that Wilbur Williamson told them that the appellant would pay the claims sued on, was not admissible as against this defendant's objections that such statements were incompetent to establish either the fact or agency of said Williamson, or the scope of the said agent's authority."

"2. The only evidence of the authority of Wilbur Williamson to bind the appellant for the bills sued on, which were all created prior to the time that appellant took over the drilling of said well, being the testimony of plaintiff's witnesses to Williamson's bare statement that he had received such authority over the telephone, the holding by the court that the assuming of the alleged obligations came within his authority and the rendition of judgment for the plaintiff is not supported by the evidence, but is contrary thereto, and the judgment against the appellant should be set aside."

The evidence of appellant's own witnesses establishes conclusively that Williamson was an agent of appellant. He was its district superintendent and foreman of drillers. This record presents no issue as to Williamson's capacity as an agent and representative of appellant who was on the ground in charge of the drilling of the well after the work was taken over by appellant.

The only real question in the case is as to the sufficiency of the evidence, independent of the declarations of Williamson, to show his authority to assume the payment of the claims sued upon.

We need not waste any time in discussing the settled and well-recognized rule that the mere declarations of one assuming to act as the agent of another are incompetent to establish such relationship or the extent of his authority as an agent.

As we have before remarked, the fact of Williamson's agency is not in issue. The only issue presented is Williamson's authority to make the agreement relied upon by appellee, and in this connection it may be said that the mere denial of such authorization by appellants' officers does not settle the question.

"Whatever evidence has a tendency to prove an agency is admissible, even though it be not full and satisfactory, and it is the province of the jury to pass upon it. Direct evidence is not indispensable—indeed, frequently is not available—but instead circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject matter of the contract. And, notwithstanding the alleged principal and agent are the only witnesses called, and that they both categorically deny the existence of the relation, the jury have the right to weigh and consider the whole of the evidence and the fair and reasonable inferences that might be drawn therefrom, and they may be entirely justified in disregarding the "yes or no" answers and in reaching the conclusion that the evidence as a whole is sufficient to prove the relation of agency to exist." 21 R. C. L. pp. 820, 821.

See, also, 2 C. J. 932, and 1 Mechem on Agency (2d Ed.) §§ 296 and 299. The same rule applies as to the extent of an agent's authority.

Appellant's vice president and general manager, A. G. Reed, testified:

"The duties of Wilbur Williamson were to see that the well was properly drilled, in order that it might not be ruined or spoiled by improper workmanship. He superintended the drilling of the wells that the company drilled themselves, as well as those that were drilled by contract. * * *

"He was supposed to stay on the job all the time, all he deemed it necessary, in connection with other matters that he looked after; he attended to other wells during that time. * * *

"I instructed Mr. Williamson to hire these men and agreed on behalf of J. S. Cosden, Incorporated, to pay them certain wages for working—he had instructions in case any one of these men became sick and quit to employ someone else. Yes, he had authority to bind J. S. Cosden, Incorporated, to do that; we considered that an emergency case. Mr. Williamson was in charge of completing the well—of the drilling—that was Mr. Wilbur Williamson, and he was in charge from about March 1st until the well was finally finished. Yes, he had authority to hire such labor as was necessary to carry on the drilling of the well; we considered that an emergency. * * *

"Mr. Williamson was District Superintendent and Foreman of drillers and had authority to fire any drillers, when we were operating the well, and hire another one in his place, and to instruct the driller when to commence and stop, and when to shut down, and when to begin again. In cases of emergency he had authority to take such action as he considered wise and necessary to protect our interest, providing he couldn't get to us or to his superior, Mr. R. C. Williamson, to communicate with him. If an emergency came up that required immediate action he had authority to act for the company, so far as the actual drilling of the well only was concerned. In connection with the completion of this well Mr. Williamson had authority to incur incidental bills around town for small items that might become necessary—within reason—that comes under the emergency matter. I believe he did incur some little bills that the Company recognized and paid. * * *

"As to the scale of wages paid and as to whether or not there were any other instructions given him with reference to wages or in case of an emergency should a man quit and he had to hire some other man and as to whether or not he had any instructions whether he should pay the men the scale, or what he should pay them; we leave that up to the foreman in charge with an idea of not delaying the work, and sometimes we have to pay excessive prices in order that the work will not be shut down. * * *

"Mr. Wilbur Williamson was instructed by me to take charge and complete the drilling of this well and to take control of the well and the men working on it on behalf of Cosden and to complete it as soon as reasonably possible."

It is apparent that Williamson was the agent of appellant who was on the ground and directly in charge of the drilling of the well, and in our opinion the testimony of Reed discloses that in such respect he acted as the general agent of appellant, and, if he did not have actual authority to make the agreement relied upon by appellant, he nevertheless, acted within the scope of his apparent authority in so doing, and the appellant became bound thereby under the settled rule in such cases.

Again, after reading all of the evidence, we are also of the opinion that in the light of all the facts and circumstances reflected by the record, and independent of Williamson's declarations, such evidence shows prima facie, and the court was warranted in finding, that Williamson had actual authority to make such agreement. A significant circumstance in that connection is appellant's failure to produce Wilbur Williamson as a witness, although he was still in its employ and evidently available. It seems all of its other officers and agents who knew anything about the issue were called as witnesses by appellant. It is strange it did not call its employee who had asserted that he had been expressly authorized to agree to pay these claims in order to avoid the threatened shut down in drilling and legal action.

We are of the opinion that, independent of Williamson's declaration to the claimants

at the time of the shutdown, his authority to assume the payment of their debts is sufficiently shown by other competent evidence.

Upon this view it follows the propositions submitted show no error.

Affirmed.