## STEPHENSON v. OATES.

### No. 14819.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 7, 1947.

Rehearing Denied Feb. 28, 1947.

Simpson, Clayton & Fullingim and Cleo G. Clayton, all of Amarillo, for appellant.

Richard Owens, of Fort Worth, for appellee.

McDONALD, Chief Justice.

This is an appeal from an order overruling a plea of privilege. Venue was

sought to be maintained in Tarrant County under Section 5 of Article 1995, Revised Civil Statutes, Vernon's Ann.Civ.St. art. 1995, subd. 5, which governs the venue of suits on contracts in writing performable in a particular county. The chief question for decision is whether the contract which the parties made was an oral contract or one in writing.

Both plaintiff and defendant are grain dealers. Plaintiff resides in Fort Worth, in Tarrant County, where the suit was brought, while defendant resides in Collingsworth County. Both parties testified that on March 4, 1946, defendant visited plaintiff's office in Fort Worth, that plaintiff agreed to buy and defendant agreed to sell five cars of grain of designated kind, that the agreement was made orally, and that nothing was said at the time about reducing the agreement to writing, nor about sending a written confirmation of the oral agreement. Thereafter, on or about the same day, plaintiff mailed to defendant a written confirmation of the purchase which provided, among other things, that the grain should be shipped to Wichita Falls, to quote from the confirmation, "for grade and diversion," and which also contained the following expression, "Make drafts on us, lading attached, thru any Ft. Worth bank." Both parties testified that they understood the last quoted clause to mean that the bill or bills of lading should be sent with draft or drafts attached to a Fort Worth bank for the purpose of being presented to plaintiff for payment. Both in the oral agreement, and by the terms of the written confirmation, it was provided that the grain was to be shipped by September first of the same year. The written confirmation bore the number 5188. The concluding sentence in the written confirmation reads as follows: "If no objection taken to this contract immediately by wire or phone, we shall consider you have accepted same as final."

Defendant contends that the only agreement of the parties was the oral agreement made on March 4th, in Fort Worth, while plaintiff contends that the written confirmation became the contract of the parties, and that venue is maintainable in Tarrant County by reason of the terms of the written confirmation.

The evidence introduced at the venue hearing consisted only of the testimony of the plaintiff and that of the defendant, the written confirmation, one letter from plaintiff to defendant, and two letters from defendant to plaintiff. It will be necessary to set out the evidence in some detail in order to present a complete picture of the situation.

Plaintiff's testimony is in part as follows: He has known the defendant several years, and has been trading with him during that time. He is familiar with the various customs in the grain business. Defendant visited plaintiff's office in Fort Worth, and plaintiff bought the grain from him there. The trade was made verbally at that time. (Note: Throughout the trial all parties appeared to use the expression "verbally" as a synonym of "orally".) The written confirmation was not given to defendant at that time, but was mailed to him later. Nothing was said during the conversation about reducing the contract to writing. Nothing was said then about drawing drafts with bills of lading attached. Asked what was discussed, plaintiff answered, "Just buying the grain."

Defendant testified: He is engaged in the business of buying and selling grain. He knows plaintiff and was in his office on March 4th. He sold plaintiff 5 cars of grain at that time. It was agreed at the time that the selling price should be governed by OPA regulations. He was then asked, "This contract provides it is subject to OPA regulations, this contract that he sent to you is what you are standing on, is that correct?" Defendant replied, "Well, really I didn't know I had a contract until he wrote me about the middle of August about delivery; because the other OPA contracts I had had already been canceled because the OPA ceased to control the price of grain." When asked if he recalled receiving the confirmation, defendant said that he did not know anything about it until he received a letter from plaintiff in August, inquiring about delivery of the grain. He then mentioned it to his wife, and she told him that a letter had been received "about

that time", doubtless referring to the time of the original agreement made in Fort Worth. The letter had not been opened, and defendant had not read it. He then read the confirmation which plaintiff had sent, and wrote plaintiff a letter reading as follows:

"Dear Mr. Oates:

"Answering your letter Dated the 13th Wish too advise you that Contract No 5188 was an OPA contract—and was too be subject too OPA regulation. Now since there is no OPA I consider your contract null and void.

"R. C. Stephenson.

"All other contracts I had have been canceled for some time Voulentairly so was certainly surprised too get your letter.

"R. C. S."

The above letter bears date of August 15, 1946.

On September 18th defendant wrote another letter to plaintiff which reads as follows:

"I have today refused to pay your draft for the amount of $2075.00.

"You know and have always understood that OPA ceiling price and OPA regulations were the basis of contract made with you and that the same is fully set forth in No. 5188."

Defendant was asked the following question and made an affirmative reply:

"In other words, what you are claiming in this case is that you had a contract with Mr. Oates, but that it was subject to the OPA regulations and therefore you were not required to deliver the grain when the OPA went off?"

It is not clear in some of the questions and answers whether the word "contract" was used to refer to the original oral agreement of the parties or to the written confirmation sent by plaintiff to defendant.

Defendant testified that he had had numbers of dealings with other Fort Worth dealers, and with plaintiff, and was asked, "And they always sent you a confirmation after you had made a sale to them?" His reply was, "By wire, or telephone, whenever we would agree on a trade, then they would tell me they would mail me a confirmation."

During the cross-examination of defendant, the written confirmation was referred to again, and the following questions were asked and answered as shown:

"Q. Well you never objected to any of its terms, did you? A. I hadn't read it.

"Q. I beg your pardon? A. I had not read it.

"Q. I mean after you read it did you object to it, make any objection to Mr. Oates concerning the terms of this contract? A. I did.

"Q. What objection did you make? Those two letters we have introduced here? A. Yes, sir.

"Q. You are not objecting to the terms of the contract, but what you are objecting to is that the contract provides that it is subject to OPA regulations? What you are doing in this case is you are standing on this contract because it provides that it is subject to the OPA regulations? A. That ceiling price was established by OPA, and at the bottom of the contract it says This contract is subject to OPA regulations.

"Q. In other words you are going by what the contract says? A. Yes."

On re-direct examination defendant said that he and plaintiff completed their agreement in Fort Worth, and that nothing was said at that time about a written instrument.

On re-cross examination, on being asked if he expected to receive a confirmation of the sale, defendant testified that that was the custom, and that he always had received confirmations of sales.

While it is undisputed that nothing was said by these parties about a written confirmation at the time they agreed upon the trade in their oral conversation in Fort Worth, there is sufficient evidence to support a finding that it was customary in deals of this kind for the buyer to send the seller a written confirmation, and that the defendant expected that it would be done. He had been in the grain business for a number of years, and it appears from his own testimony that he was familiar

with and accustomed to the practice of receiving written confirmations of sales made by oral agreement. His own testimony is also sufficient to support a finding that he accepted the written confirmation as the basis of their agreement, and was standing on the terms of the written confirmation at the time of trial. He referred in his two letters to the contract by the number contained in the written confirmation, and in the second letter said that the OPA ceiling price and OPA regulations were the basis of the contract made with plaintiff and "that the same is fully set forth in No. 5188." He testified that at the bottom of the contract, referring to the written confirmation, "It says this Contract is subject to OPA regulations", and declared from the witness stand that he was going by what the contract said.

■ The trial court overruled the plea of privilege. No findings of fact and conclusions of law were filed, and none requested, so we must presume that the trial court found such facts in support of his judgment as were warranted by the evidence. If we be correct in holding that there is sufficient evidence to warrant a finding that defendant accepted the written confirmation as the basis of the transaction between him and plaintiff, then it is clear that venue was maintainable in Tarrant County by reason of the clause of the contract providing for draft with bill of lading attached to be sent through any Fort Worth bank. It is not material that draft and bill of lading were in fact never drawn and sent to Fort Worth, because the contract required defendant to make a symbolical delivery of the grain in Fort Worth in this manner. Nor is the written confirmation rendered ineffective by reason of the fact that defendant did not sign it. Grainger v. Gottlieb, Tex.Civ.App., 234 S.W. 604; Pittman & Harrison Co. v. B. F. Robey & Co., Tex.Civ.App., 234 S.W. 1114; Turner v. Riverside Cotton Oil Co., 113 Tex. 143, 252 S.W. 1060. As said in Berlowitz v. Standley, 117 Tex. 362, 5 S.W.2d 963, 965: "The fact that the written obligation of the sellers accords with that imposed under the initial telephone offer and acceptance in no wise prevents the maintenance in Harris County of appellant's suit to enforce the sellers' written obligation."

It is true that in many cases venue has been sustained on the ground that the draft with bill of lading attached became a written offer by the seller to perform in the buyer's county, and that, when accepted by the buyer, it became a written contract to perform in the buyer's county, but there are other cases, cited above, where it is clearly recognized that the written confirmation, where accepted by the seller though not signed by him, may become such a written contract to perform in the buyer's county as will sustain venue in such county. Appellant suggests that those cases arise only where the written contract modifies or changes the prior oral agreement, but such contention is not in harmony with the pronouncement of the Supreme Court in Berlowitz v. Standley, quoted supra.

The judgment of the trial court is affirmed.