## WOOD MOTOR CO., Inc. v. HAWKINS.
### No. 6454.

Court of Civil Appeals of Texas. Texarkana.
Oct. 13, 1949.

Rehearing Denied Dec. 29, 1949.

488

Prendergast & Prendergast, Marshall, Robert F. Salmon, Linden, for appellant.

Carney, Carney & Mays, Atlanta, for appellee.

LINCOLN, Justice.

This is an appeal from an order of the District Court of Cass County overruling appellant's plea of privilege to be sued in Harrison County. The appellant is a corporation having its domicile in Harrison County, and the appellee resides in Atlanta, Cass County.

The suit is for damages which appellee claims against appellant for the failure of appellant to deliver to appellee six automobiles which appellant allegedly was obligated to deliver under a contract then existing between them. The appellant was a "Direct Dealer," commonly known as a district dealer, of De Soto and Plymouth automobiles under arrangements between it and the Chrysler Corporation. On August 17, 1945, litigants entered into a written contract whereby the appellee became Associate Dealer under appellant in a sales area defined as Atlanta, Cass County, Texas. Under such contract appellant was to represent De Soto and Plymouth motor products in such sales area and agreed "to sell energetically the vehicles, parts and accessories he buys from Direct Dealer and to provide and maintain facilities for selling and servicing them * * * in the foregoing sales area."

The contract was executed in the City of Atlanta. It is quite lengthy and general in its terms. It goes into great detail to set forth matters to the mutual interest of the parties. The number of automobiles to be sold and delivered by Direct Dealer to Associate Dealer is not stated in the contract nor are the prices of automobiles or other motor vehicles, parts and products set forth. On the matter of prices and discounts the contract carried this stipulation: "Direct Dealer will from time to time advise Associate Dealer of the prices of the vehicles and parts and accessories he buys from Direct Dealer, and will furnish Schedules of Discounts and Terms of purchase to Associate Dealer."

With reference to the procurement of motor vehicles we find the following provisions:

"In order to facilitate the orderly scheduling of production and shipments from week to week, Associate Dealer agrees to submit weekly his orders for new motor vehicles. Associate Dealer also agrees to comply with Direct Dealer's request for annual or other estimates of Associate Dealer's prospective requirements of De Soto and Plymouth products, but such estimates are not to be regarded as orders by Direct Dealer.

"De Soto and Plymouth motor vehicles are made on dealer's order and are scheduled for production after dealer's order is received. A dealer is expected to accept any motor vehicle ordered by him and scheduled for production. Direct Dealer will not ship motor vehicles to Associate Dealer except on Associate Dealer's order.

"In any case where Associate Dealer orders a sufficient quantity of motor vehicles to make a freight carload lot, Direct Dealer agrees, upon request of Associate Dealer, to notify the factory to make shipment of such orders directly to Associate Dealer."

A separate instrument of writing signed by appellant, and accepted by ap-

pellee, called "Terms of Purchase" was furnished to appellee as provided for above. It bears the same date as the contract. Since the "Terms of Purchase" was executed by the parties simultaneously with the original contract and was in contemplation under the terms of the contract it was a part of the whole agreement between the parties. The "Terms of Purchase" carried the following pertinent provisions:

"For the information and guidance of Associate Dealer, Direct Dealer sets forth below the terms relating to the purchase by Associate Dealer from Direct Dealer of De Soto and Plymouth motor vehicles and motor vehicle parts and accessories.

"Direct Dealer solicits orders from Associate Dealer subject to the following provisions which shall be deemed to have been incorporated in and made a part of each order received by Direct Dealer from Associate Dealer unless Direct Dealer is notified to the contrary by such Associate Dealer at the time of placing such orders."

"The practice of Direct Dealer is to ship motor vehicles ordered by Associate Dealer by the means of transportation which Associate Dealer requests be used. In order, however, to assure prompt shipment of motor vehicles ordered by Associate Dealer, under varying weather and other conditions affecting transportation agencies and because motor vehicles can not be stored at the factory without clogging production but must be moved out promptly after being built, Associate Dealer recognized that it is necessary that Direct Dealer retain the right to ship by any means of transportation. Accordingly, Direct Dealer may, except as herein otherwise provided, ship motor vehicles ordered by Associate Dealer by rail, haulaway, boat, or any other means of transportation, or deliver them for driveaway, in conformance with the policy of Direct Dealer and Chrysler Corporation."

"In accordance with established procedure which experience indicates is sound business practice, Associate Dealer shall pay Direct Dealer for the motor vehicles above referred to and for any extra features and equipment in lawful money of the United States of America the purchase price thereof in cash in advance or on sight-draft against bill of lading, with collection charges, if any, added. Until further notice the purchase price thereof shall be Chrysler Corporation's Detroit delivered prices current from time to time at Detroit, Michigan, or any other point hereafter established by Chrysler Corporation less the then current Associate Dealer discounts and/or the then current associate dealer net prices, plus the following charges." (Here follow provisions not necessary to copy).

"The title to De Soto and Plymouth motor vehicles, parts and other merchandise furnished by Direct Dealer to Associate Dealer shall be and remain in Direct Dealer until paid for in full, in cash. Negotiable instruments are received only as conditional payment."

"Direct Dealer shall have the right to accept, in whole or in part, any or all orders received, and shall not be liable for any loss or damage resulting from its failure to ship or deliver goods ordered."

Appellee seeks to maintain venue of the suit in Cass county under Subd. 5 of Article 1995, R.S. of Texas, as amended in 1935, Vernon's Ann.Civ.St. art. 1995, subd. 5, reading as follows (the amending words being in italics): "Contract in Writing.— If a person has contracted in writing to perform an obligation in a particular county, *expressly naming such county, or a definite place therein, by such writing,* suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile."

Under this provision it is not necessary that a plaintiff make proof of a cause of action in order to maintain the suit in a county other than that of the residence of the defendant, Petroleum Producers Co. v. Steffins et al., 139 Tex. 257, 162 S.W.2d 698; Gifford-Hill & Co., Inc., v. Hearne Sand & Gravel Co. et al., Tex.Civ. App., 183 S.W.2d 766; Roach et al. v. Shaeffer, Tex.Civ.App., 214 S.W.2d 128,

but it is necessary that the plaintiff make proof that the defendant has agreed in writing to perform the obligation sued upon in the county of suit and that such instrument of writing expressly named such county or a definite place therein by such writing. The written contract is one for sale of automobiles, and other motor vehicle parts and products by appellant and the purchase thereof by appellee. The contract was executed in Cass County. The two writings, when construed together, clearly imply that the automobiles and other motor vehicles, parts and products were to be delivered by appellant to appellee at Atlanta, in Cass County. But in any event, the writing stipulated the title to the automobiles remained in appellant until they were paid for, and further provided that they might be shipped to appellee there in carload lots, or less than carload lots and paid for by sight draft with bill of lading attached. Under this provision of the contract, delivery of the automobiles was to be had at Atlanta, Cass County, and the contract to that extent created an obligation upon the part of appellant which was performable in that county. Shannon v. Bridgeport Brick Co., Tex.Civ.App., 283 S. W. 182; People's Ice & Mfg. Co. v. Interstate Cotton Oil Refining Co., Tex.Civ. App., 182 S.W. 1163, error refused; Berlowitz v. Standley, 117 Tex. 362, 5 S.W.2d 963; Marcus v. Armer, 117 Tex. 368, 5 S. W.2d 960; Malone et al. v. Dawson et al., 117 Tex. 377, 5 S.W.2d 965.

■ However, appellee alleged in this case that the appellant was obligated in writing to make delivery of six automobiles during the years 1947 and 1948, which it did not do, and by reason of non-performance this suit was brought for damages against appellant. The suit is maintainable in Cass County, under the foregoing holdings, if the appellee has made proof of the obligation to deliver the six automobiles alleged. Since the writings did not specify the number of automobiles to be delivered, it is necessary to examine the proof further. The written contract provides that the Associate Dealer, appellee, will submit his orders for new motor vehicles, and that such vehicles are made on the dealer's or-

der and are scheduled for production under the order as received. The dealer is expected to accept any motor vehicle ordered by him and scheduled for production. It is in evidence that the parties determined at the time of the contract that appellee's quota of automobiles under normal production would be forty Plymouths and twenty-eight De Sotos. At the time of the contract the factory was not in full production and the parties arrived at a percentage basis, whereby appellee would receive from appellant 6.6 per cent of all Plymouths received by appellant from the manufacturers, and 3.3 per cent of all De Sotos so received by appellant. This agreement was carried out for the years 1945 and 1946, but for the years 1947, and up until April 1, 1948, appellant lacked six automobiles of filling this quota. The specific agreement on the percentage bases stated was the result of a verbal agreement between appellant and appellee. In deference to the judgment and order of the trial court we must hold that such agreement was made, and that under the agreement appellee was entitled to the six automobiles. If the verbal agreement should stand alone, the suit would not be maintainable in Cass County. But the evidence shows that at the time of the signing of the contract the appellee signed a written order for sixty-eight cars per year during the continuance of the contract, with the verbal understanding that he would probably not get that many automobiles, but, rather, he would receive them upon the percentage bases above stated. The contract does not specifically require the order for automobiles to be in writing, but appellee says that he made it in writing. The evidence is that the order had been accepted and that under it he had been furnished automobiles from the date of the contract until its cancellation on April 1, 1948. The fact that the order was given and that automobiles were supplied by appellant evidences an acceptance upon the part of appellant. In addition, however, the appellee testified that the order had been accepted. We think that under this showing the appellant had contracted in writing to perform an obligation to de-

liver the six automobiles to appellee in Cass County, Texas, and this meets the requirements of the venue statute above quoted.

In Vinson v. Horton et al., 207 S.W.2d 432, this court held that the contract in writing need not be signed by both parties if one signs it and the other accepts it. That seems to be the situation as regards the order. Construing all the instruments together, and with the oral testimony, we conclude the trial court was warranted in holding that the suit was maintainable in Cass County under Sec. 5 of the venue statute.

Appellee also seeks to maintain venue in Cass County under Subd. 23 of Art. 1995, R.S. of Texas, Vernon's Ann.Civ.St. Art. 1995, subd. 23, the pertinent parts of which are as follows: "Suits against a private corporation, association, or joint stock company may be brought in the county in which its principal office is situated, or in the county in which the cause of action or a part thereof arose."

Under this provision it is necessary for the plaintiff to allege and prove a cause of action against the defendant, which arose in whole or in part in the county where the suit was filed, if it is other than the county of defendant's residence. This subdivision of the venue statute does not require the contract to be in writing. The cause of action "consists of the contract and its breach, and the right and the injury thereto." Early-Foster Co. v. A. P. Moore's Sons, Inc., Tex.Civ.App., 230 S.W. 787, 788, and cases cited.

"And a contract is made, under well-established rules of law, at the place where the acceptance of an offer is given." Early-Foster case, supra.

We have examined the appellee's petition and find that it sufficiently states a cause of action. From what we have said with reference to the proof of the contract to deliver six automobiles, and its breach, it is seen that the trial court found that the appellee both alleged and proved a cause of action which arose in Cass County, Texas. There is sufficient evidence to support this finding and judgment.

The appellant being a corporation, the suit was thus maintainable against it in Cass County.

Appellant has cited us to numerous cases, among them Ford Motor Co. v. Maddox Motor Co., 123 Tex. 608, 73 S.W.2d 517; Southwestern Peanut Growers Ass'n, Inc., v. Kendrick, Tex.Civ.App., 183 S.W.2d 1019; and Uvalde Construction Co. v. Shannon, Tex.Civ.App., 165 S.W.2d 512. We have carefully examined these and the other authorities cited by appellant, and do not believe any of them conflict with our present decision.

We are therefore constrained to overrule appellant's points of error, and the judgment of the district court is affirmed.