Roy RENEAU et al., Appellants,

v.

FELIX MEYER & COMPANY, Appellee.

No. 12830.

Court of Civil Appeals of Texas.

Galveston.

May 12, 1955.

Elbert R. Jandt, Seguin, for appellants.

Walker F. Johnston, Hay, Kirk & Baggett, Houston, for appellee.

CODY, Justice.

This is an appeal from an order overruling a plea of privilege. The plaintiff, a corporation, instituted this suit against defendants, a partnership, in the District Court of Harris County to recover $3,240 alleged to be due on a total of 900,000 pounds of milo maize (being 10 carloads) alleged to have been bought by plaintiff in approximately equal shipments on June 9, 1952, and July 2, 1952. The defendants seasonably filed pleas of privilege to be sued in the county of their residence, Guadalupe County, and plaintiff sought to maintain venue in Harris County under Subdivision 5 of R.C.S. Art. 1995, Vernon's Ann. Civ.St. art. 1995, subd. 5, which governs the venue of suits on contracts in writing performable in a particular county.

The court, trying the case without a jury, found against defendants, and then in response to defendants' request filed conclusions of fact and law. These findings of fact were necessarily lengthy and we have felt impelled to set forth the substance of many of the fact findings to the end that defendants' points seeking to reverse the judgment of the trial court can be understood. The court found, among other things:

(a) That plaintiff and defendants were members of the Texas Grain & Feed Dealers' Association at and prior to June 9, 1952 (when the first purchase was alleged to have taken place), and remained members until defendants were expelled for refusing to arbitrate this controversy under the rules of said Association.

(b) Defendants *agreed,* in their application to join said Association of April 20, 1946, which application was in due course accepted, *that they would comply* with the conditions and requirements of its constitution, by-laws, etc.

(c) Rule 5 of the Trade Laws of the Association, in force at all material times, reads so far as material, "Where one party to a trade confirms, this confirmation shall be binding upon both parties, unless objected to at the time of the receipt of same."

(d) On June 9, 1952, plaintiff purchased from defendants, using the long-distance telephone, 5 carloads of bulk No. 2 Milo Maize, and on the same date mailed a confirmation on its plaintiff, Feliz Meyer and Company, Inc.'s, usual form and the same was received by defendants in due course of the United States mail.

(e) Prior to the two grain transactions, which are the subject of this controversy, the parties had consummated a long series of grain transactions in which plaintiff had sent defendants the same kind of confirmation through the mail which was in all material respects the legal equivalent of the purchase and confirmation of June 9, 1952, and all were handled in like manner. No form of written acceptance of the confirmation was requested and none was mailed by defendants.

(f) The confirmation aforesaid stated all details of the purchase, including the routing and bill of lading information, and additionally contained the following:

"If the above confirmation is not in accordance with the understanding of your sale and entirely satisfactory to you, advise us immediately by wire or phone. The acceptance of this confirmation without advising us immediately in case of error is acknowledgment of the contract above. This contract is performable and payable at Houston, Texas."

(g) The second of said grain transactions occurred on July 2, 1952, whereby plaintiff purchased from defendants over long distance telephone five more carloads of bulk No. 2 yellow Milo Maize and this second transaction in all material respects followed the same course as the transaction of June 9, aforesaid.

(h) Shortly after mailing the last confirmation in July, 1952, plaintiff sold the ten carloads of Milo Maize to Uhlmann Elevators Company of Ft. Worth, Texas.

(i) The defendants refused to ship plaintiff the ten carloads of grain described in the two confirmations, or any part of it, and as a result plaintiff failed to fulfill its contract of sale to the Uhlmann Elevators Company of Ft. Worth and was compelled to pay Uhlmann the market price at delivery amounting to $3,240 in order to receive a cancellation and a release of plaintiff's resale contract to said Elevators Company.

(j) In early August, 1952, plaintiff sought an arbitration of its controversy with defendants from the Texas Grain & Feed Dealers' Association, and defendants at that time, on the 26th of August, 1952, gave as their defense for not shipping the cars of grain some matters concerning a contract between the parties occurring about 1946.

(k) In December of 1952, the board of directors of the Association expelled defendants for their failure to arbitrate with plaintiff.

(*l*) Prior and at all times during these controversies the plaintiff was incorporated under the name of Felix Meyer and Company, Inc., but was sometimes referred to as Felix Meyer & Company by both parties; but by whichever name the corporation was referred to, both parties knew that plaintiff was the only party at interest of a similar name.

Defendants have predicated this appeal upon five "Assignments of Error" and two

propositions of law. Under the "Assignments of Error" the defendants complain (1) of the court's finding that Felix Meyer and Company, Inc., was a member of the Texas Grain and Feed Dealers' Association, (2) of the finding that plaintiff mailed defendants the same kind of confirmation as on previous dealings, (3) of the finding that plaintiff did not request a written acceptance on the confirmations of June 9 and July 2, 1952, (4) of the court's finding that the rules and by-laws of the Association could be used to aid plaintiff in making a contract, and (5) of the court's holding that the oral agreements sued on by plaintiff became written contracts because after oral contracts plaintiff mailed a written confirmation of said agreements.

The so called propositions will not be stated.

We overrule defendants' "Assignments of Error."

■ One of defendants' principal complaints is against the court's finding that Felix Meyer & Company, Inc., was at all material times a member of the Texas Grain and Feed Dealers' Association. Indeed it would seem that plaintiff's attorney was ignorant of the fact that plaintiff's business was originally conducted under the trade name of Felix Meyer & Company, and was subsequently incorporated under the name of Felix Meyer & Company, Inc. We infer this is so because the pleadings upon which plaintiff went to trial begin with the words "Now comes Felix Meyer & Company, a corporation * * *". By trial amendment filed apparently after the trial, plaintiff duly alleged that the business had been incorporated long prior to 1952. And among the members of the Texas Grain and Feed Dealers' Association, plaintiff was listed as Felix Meyer & Company. But at all times material the association recognized that plaintiff was a member. In the proceedings before the association, whereby plaintiff sought to compel defendants to arbitrate the controversy, the association and defendants recognized that plaintiff was a member. The confirmations which plaintiff mailed to defendants and which defendants duly received used plaintiff's correct corporate name. According to the record defendants at all times acquiesced in the fact that plaintiff was at all times a member of the association. The court's complained-of finding is sufficiently supported by the record.

■ Defendants, in their application to the Texas Grain and Feed Dealers' Association to be admitted as members, promised if accepted to comply with all conditions and requirements of the constitution, by-laws, rules, etc., of the association. For a copy of the application for membership in the Texas Dealers' Association, see Kelsey v. Early Grain & Elevator Co., Tex.Civ. App., 206 S.W. 849. Among the trade rules of the association is Rule No. 5 which is also copied in the opinion of the Kelsey case, supra. As will be noted therefrom, Rule 5 provides that where only one party to a trade confirms, such confirmation shall be binding unless the other party objects thereto at the time of receipt thereof. Under the authority of the Kelsey case, we hold that the letter of confirmation was a part of the contract. And since it provides for the performance of the contract in Harris County, the court properly overruled appellants' plea of privilege.

■ However, regardless of the membership of the parties in the association at the time of the two grain transactions, in view of the court's findings of the established course of dealings between the parties, the court should have found that the letters of confirmation constituted a contract in writing between the parties to be performed in Harris County. See Grainger v. Gottlieb, Tex.Civ.App., 234 S.W. 604; Gottlieb v. Dismukes, Tex.Civ.App., 230 S.W. 792. See also Stephenson v. Oates, Tex.Civ.App., 213 S.W.2d 855, 857–858.

Without further extending this opinion, we hold that the court's order overruling defendants' plea of privilege should be affirmed.

Affirmed.