**SCHNEIDER CONSTRUCTION COM-
PANY, Inc., Appellant,**

v.

**FRASER BRICK & TILE COMPANY,
Appellee.**

**No. 13049.**

Court of Civil Appeals of Texas.

San Antonio.

Dec. 12, 1956.

Rehearing Denied Jan. 9, 1957.

———◆———

Davis, Clemens, Knight & Weiss, San Antonio, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellant.

Al M. Heck, San Antonio, Vinson, Elkins, Weems & Searls, Leroy Jeffers, J. M. Hopper, Houston, for appellee.

## W. O. MURRAY, Chief Justice.

This is a plea of privilege case. Fraser Brick & Tile Company instituted this suit in the District Court of Bexar County against Schneider Construction Company, Inc., seeking to recover the sum of $3,767.78, alleged to be the balance due on a contract between the parties for the sale and purchase of glazed structural tile.

Schneider Construction Company, Inc., filed its plea of privilege to be sued in Harris County, Texas, the county of its domicile. Fraser Brick & Tile Company, Inc., controverted this plea and contended that the District Court of Bexar County had venue of the suit under Subdivision 5 of Article 1995, Vernon's Ann.Civ.Stats., because the defendant had entered into a contract in writing which was to be performed in Bexar County, Texas. The trial court overruled the plea of privilege, and Schneider Construction Company, Inc., has prosecuted this appeal.

Appellant's first point is that the trial court erred in holding that appellee's Exhibit No. 2 was a part of the contract. Appellee's Exhibit No. 2 was styled "Acknowledgment of Order". The original of this exhibit was sent to Arketex Ceramic Corporation, Brazil, Indiana, the manufacturing company which was to make the tile involved, and a carbon copy thereof sent to Schneider Construction Company, Inc., at Houston, Texas. The trial court held that Exhibit No. 2 was a part of the contract between the parties, and the all-important question in this case is the correctness of that holding.

It is well to here make a full statement of the facts. In the early part of 1954, the Houston Independent School District invited bids for the construction of a large new Junior High School in the City of Houston, to be known as the Foster Place Junior High School. Appellant entered a bid as general contractor for the construction of this school building. Appellee was engaged in the business of manufacturing and distributing brick and, as agent for the Arketex Ceramic Corporation, also sold glazed structural tile. From the plans and specifications deposited by the School Board, appellee, on or about February 12, 1954, prepared quotations, for the information of bidders, on the structural tile to be used in the building, and mailed copies thereof to all of the contractors bidding on the job, including appellant. On February 17, 1954, when the bids were opened, it was ascertained that appellant was the lowest bidder, and thereafter on February 27, 1954, appellant entered into a contract with the Houston Independent School District for the construction of the Foster Place Junior High School. On February 24, appellant was contacted by Jarrell B. Crow, vice-president of appellee, seeking a contract to furnish the glazed structural tile for the school building. Crow was informed by appellant's chief estimator, Staples, that all of the quotations for the tile were substantially the same, but that the important thing was an early delivery of the tile, so that the building contract might be completed within the 480 days provided for in the general contract, and that it would be necessary for the delivery of the tile to begin on May 1, 1954 and be completed by September 1, 1954. Crow stated to Staples and Carl A. Schneider, appellant's president, that it seemed to him that June 15 would be the best starting date they could make for delivery on the job. Crow was told that his company would receive the order for the tile, and that he should notify the manufacturing company at once, so there would be no delay in the delivery of the tile. It was agreed that the order for the tile could be reduced to writing at a later date. On February 24, 1954, Crow prepared appellee's Exhibit No. 2, and, as before stated, mailed the original to Arketex Ceramic Corporation and a copy to appellant. On

the face of this Exhibit, at the bottom of the page, appeared the following:

"Acknowledgment of Order

"We thank you for this order which has been entered as above and subject to the terms and conditions on reverse side of this sheet. If this is not in accordance with your understanding or if there is any discrepancy, please advise us promptly.

"Fraser Brick & Tile Company
By /s/ Jarrell B. Crow"

On the reverse side of Exhibit No. 2, under the heading "Terms and Conditions", among other things, appeared the following:

"Shipment and/or delivery of all materials is subject to delays caused by strikes, car shortages, limitations of plant capacities and manufacturing schedules, by governmental directives or priorities, or by other causes beyond our control. * * *

"If Purchaser has established credit acceptable and satisfactory to us, our terms are 30 days net, with all bills payable at our office in San Antonio, Texas, free of expense to us. * * *"

On the face of Exhibit 2, under "Shipping Instructions", appeared the following: "Start shipments about June 15, 1954."

On March 12, 1954, appellant mailed in duplicate to appellee a regular purchase order covering the structural tile. In the letter of transmittal appellee was asked to sign and return both copies, and told that appellant would return one signed copy to appellee. This document, fully signed by the parties, was introduced in evidence as appellee's Exhibit No. 3. It provided that the delivery of the tile should start about May 1, 1954, and be completed by September 1, 1954. Appellee's Exhibit No. 3 contained the printed notice, "Advise immediately if unable to fill order as specified." Appellant was never notified that appellee would not be able to fill the order as specified in Exhibit No. 3. Appellant was allowed the cash discount provided for in Exhibit No. 2, but the trial court found that this was a universal practice known to appellant on this type of contract. On March 18, 1954, appellant wrote to appellee, enclosing a print of its progress schedule on the job, showing the starting dates of the various trades and items of work, and stating that appellant's contract called for completion of the entire project by June 22, 1955, with liquidated damages of $50 per day for each calendar day thereafter. Appellee was further notified that tile would be needed soon after the commencement of the job.

Appellee did not begin delivery of the tile until August, 1954, and made its final delivery in January, 1955. The total purchase price of the tile was approximately $50,000. Appellant often complained about the delay in the delivery of the tile, but paid for all the tile appellee delivered, except the sum of $3,767.78, which is the subject of this lawsuit. Appellant's refusal to pay this sum was based upon the contention that it was damaged in a greater sum by the failure to deliver the tile promptly.

The trial court filed findings of fact and conclusions of law. He concluded that appellee's Exhibits Nos. 2 and 3, were a part of the contract between the parties, and found as a matter of fact that the contract with reference to the tile was composed of appellee's Exhibits Nos. 2, 3, 4, 5, 6 and 7.

The court further found as follows:

"(4) * * * Defendant's President Carl Schneider and his brother were the only officers or employees of Defendant authorized to enter into a contract. Neither of them had any knowledge of the existence of Plaintiff's Exhibit Number 2 or the fact that it had been received in their office until after the controversy arose sometime in 1955; however, Defendant's estimator,

Staples, had apparent authority in connection with this transaction and handled most of the dealings with the said Fraser Brick Company."

■ Although the trial court found that Carl Schneider and his brother "were the only officers or employees of Defendant authorized to enter into a contract," he must have intended to say, "expressly authorized," because in the same paragraph the court finds that estimator, Staples, had "apparent authority" to handle this transaction. Of the six exhibits which the court held constituted the entire contract between the parties five were handled by Staples. Staples was the first person contacted by Crow, vice-president of appellee. Carl Schneider testified that this matter was Staples' job. It is a fair deduction from the evidence that Schneider held Staples out to appellee as the proper person for it to deal with. Schneider said that he and his brother did not see Exhibit No. 2 until after the controversy arose. This exhibit was mailed to and received at appellant's office, and upon demand was produced at the trial. It can be inferred from the evidence that Staples received and read Exhibit No. 2, in due course. The finding of the trial court that Staples had apparent authority is amply sustained by the evidence, and this renders it immaterial whether or not Carl Schneider or his brother ever saw Exhibit No. 2 before the controversy arose. J. S. Cosden, Inc. v. Meinecke, Tex.Civ.App., 36 S.W.2d 790; Keeton v. Gillam Soap Works, Tex.Civ. App., 215 S.W.2d 675; Marathon Oil Co. v. Hadley, Tex.Civ.App., 107 S.W.2d 883; Chanowsky v. Friedman, Tex.Civ.App., 219 S.W.2d 501. Appellant relies upon the case of Harris Millinery Co. v. Bryan, 59 Tex.Civ.App. 477, 125 S.W. 999, but the facts in that case are so different from these that we do not regard it as being in point. See, Dowdell v. Ginsberg, Tex. Civ.App., 244 S.W.2d 265.

■ Even if Staples never saw Exhibit No. 2, it was mailed to and received by the corporation, and, under the circumstances, it was incumbent upon the corporation to see that the instrument was read and accepted or rejected by someone in authority. Williston on Contracts, Vol. 1, par. 89, p. 251.

■ Under all the circumstances, it was not necessary that Exhibit No. 2, be signed by appellant in order to sustain venue under Subdivision 5 of Article 1995, Vernon's Ann.Civ.Stats.; Grainger v. Gottlieb, Tex. Civ.App., 234 S.W. 604; Universal Mills v. Lasseter, Tex.Civ.App., 87 S.W.2d 343; Hicks Rubber Co. v. Port Iron & Supply Co., Tex.Civ.App., 252 S.W.2d 987; Dowdell v. Ginsberg, Tex.Civ.App., 244 S.W. 2d 265; Wood Motor Co., Inc. v. Hawkins, Tex.Civ.App., 226 S.W.2d 487; Burtis v. Butler Brothers, 148 Tex. 543, 226 S.W.2d 825; Reneau v. Felix Meyer & Co., Tex. Civ.App., 279 S.W.2d 161; Nelson v. Dunigan Tool & Supply Co., Tex.Civ.App., 265 S.W.2d 680; Skinner v. Alice Pipe & Supply Co., Tex.Civ.App., 251 S.W.2d 752.

■■ It is contended by appellant that appellee's Exhibit No. 3, varied so substantially and essentially from the offer of appellee as to be a rejection of the offer and to constitute a counter-proposal, which counter-proposal, when accepted and signed by appellee, became the agreement between the parties. It is true that Exhibit No. 3 did provide for a different delivery schedule from that provided by Exhibit No. 2, and might be regarded as a rejection of the delivery schedule provided for in Exhibit No. 2, but it in no way repudiated the provision in Exhibit No. 2, to the effect that the contract was performable at appellee's office in San Antonio, Bexar County, Texas, and upon this plea of privilege hearing that is the only provision we are really interested in. Exhibit No. 3 was not a complete contract within itself. The trial court properly held that it took Exhibits Nos. 2, 3, 4, 5, 6 and 7, to constitute the complete contract of the parties. Exhibit No. 2 alone contains the provision for the allowance of cash discounts and provides

**302**

where the payments are to be made. Appellant made all payments in San Antonio and claimed the cash discounts provided for in Exhibit No. 2. Prior to the time the controversy arose, the parties carried out the contract as though this provision of Exhibit No. 2 was in effect. The manner in which the parties themselves construed the contract is entitled to great weight. Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504.

The judgment is affirmed.